REGINALD B. LANIER, Respondent, *v.* GEORGE T. BOWDOIN, Individually and as Liquidator of WINSLOW, LANIER AND COMPANY, et al., Appellants, Impleaded with Others.

Argued October 16, 1939; decided December 28, 1939.

*John W. Davis, Edwin F. Blair, Saul Levy, Luke W. Finlay* and *John B. Coleman, Jr.*, for George T. Bowdoin, individually and as liquidator of Winslow, Lanier and Company, appellant. By the express provisions of the partnership articles each of the general partners is obligated to bear only his own individual share of firm losses and no more — an obligation which is limited to a specified portion of firm losses. (*Cream of Wheat Co.* v. *Crist Co.*, 222 N. Y. 487; *Browne* v. *Paterson*, 36 App. Div. 167; *Home Ins. Co.* v. *Continental Ins. Co.*, 180 N. Y. 389; *Pratt* v. *Dwelling House Mutual Fire Ins. Co.*, 7 App. Div. 544.) No obligation of guaranty can be implied. (*Bunting* v. *Bunting*,

199 Penn. St. 27; *Hawkins* v. *United States,* 96 U. S. 689; *Ætna Nat. Bank* v. *Fourth Nat. Bank*, 46 N. Y. 82; *Klebe* v. *United States*, 263 U. S. 188; *Rhinelander* v. *Farmers' Loan & Tr. Co.*, 172 N. Y. 519; *Simon* v. *Etgen*, 213 N. Y. 589.) If the provisions of the partnership articles relating to the distribution of firm losses be deemed in any way ambiguous, the practical construction of the articles by the conduct of the parties refutes any possible construction that defendant Bowdoin, as the only solvent general partner, is liable to plaintiff for any part of his lost capital. (*Carthage T. P. Mills* v. *Village of Carthage*, 200 N. Y. 1; *Insurance Co.* v. *Dutcher*, 95 U. S. 269; *Clausen* v. *Title Guaranty & Surety Co.*, 168 App. Div. 569; 222 N. Y. 675; *Brooklyn Public Library* v. *City of New York*, 250 N. Y. 495.) In the absence of contract a general partner is not obligated to restore any part of a limited partner's lost capital. Sections 40 (1) and 71 (d) of the Partnership Law (Cons. Laws, ch. 39) do not apply to the relations between a limited partner and a general partner. (*Rosenberger* v. *Kuesel*, 292 Penn. St. 184; *Whitman* v. *Porter*, 107 Mass. 522; *Stone* v. *Fenno*, 6 Allen, 579; *Briggs* v. *Barnett*, 108 Va. 404; *Snyder* v. *Elkan*, 187 Ga. 164; *Harris* v. *Murray*, 28 N. Y. 574; *Fifth Ave. Bank* v. *Colgate*, 120 N. Y. 381; *Childs* v. *Seabury*, 35 Hun, 548; 110 N. Y. 627; *Baily* v. *Hornthal*, 154 N. Y. 648; *Bunting* v. *Bunting*, 199 Penn. St. 27.)

*Chester C. Davis* for de Bennville K. Seeley et al., appellants.

*Douglas Campbell* and *Ralph M. Ketcham* for respondent. Under existing New York statutes, read in conjunction with the partnership agreement, Bowdoin is obligated to contribute to the losses of the firm in proportion to his share in the profits, and, as the only solvent general partner, to make up the shares of the insolvent partners to an extent sufficient to repay the special partner's capital contribution. (Cons. Laws, ch. 39, §§ 10, 40, 71, 98, 99, 105, 112, 118.) The partnership agreement is not to the contrary of section 71 (d) of the statute. (*Farmers Bank*

v. *Federal Reserve Bank*, 262 U. S. 649; *People ex rel. City of New York* v. *Nixon*, 229 N. Y. 356; *Ogden* v. *Saunders*, 12 Wheat. 213; *Strauss* v. *Union Central Life Ins. Co.* 170 N. Y. 349; *Commercial Bank* v. *Pfeiffer*, 22 Hun, 327; *Rhinelander* v. *Farmers Loan & Trust Co.*, 172 N. Y. 519; *Whitcomb* v. *Converse*, 119 Mass. 38; *Meriden Nat. Bank* v. *Gallaudet*, 120 N. Y. 298; *Oppenheimer* v. *Clemmons*, 18 Fed. Rep. 886.) Bowdoin's proportional share of firm losses is sufficient to repay the special partner's capital in full irrespective of Bowdoin's obligation to respond for the shares of the insolvent partners. (*Elevator Co.* v. *Thomson*, 166 Mo. App. 170; *Barnes* v. *Arnold*, 45 App. Div. 314; 169 N. Y. 611; *Lawrence* v. *Nelson*, 21 N. Y. 158.)

RIPPEY, J. For many years prior to 1930, the partnership firm of Winslow, Lanier & Company continuously carried on a general banking and brokerage business in the city of New York with changes of personnel from time to time and with membership in the New York Stock Exchange. On December 31, 1928, a new partnership agreement in writing was entered into with James J. Higginson, de Bennville K. Seeley, George T. Bowdoin, Donaldson Tucker and Milton P. Harley as general partners and the plaintiff Reginald B. Lanier as special partner. Lanier contributed $550,000 cash to the capital of the firm, the general partners contributed varying amounts in cash aggregating $1,800,000 and Tucker also contributed his seat on the New York Stock Exchange. A certificate was thereupon filed as required by section 91 (1) of the Partnership Law of the State of New York (Cons. Laws, ch. 39). On October 31, 1929, a new partnership agreement in writing was executed by the partners, effective as of the close of business on that date, and Carroll J. Waddell was admitted to the firm as a general partner with a capital cash contribution of $25,000. This latter agreement contained substantially the same general provisions as were contained in the 1928 agreement. The accounts of the old firm were carried forward to the new firm. The only new cash

contribution made to the capital assets was that made by Waddell. Changes were made in the percentages of profits which each member of the firm (except Lanier) should be entitled to receive, made necessary by the admission of Waddell.

Higginson died on February 24, 1930. At the time of his death he owed the firm more than his capital contribution. On June 3, 1930, the general partners entered into an agreement with the executors of Higginson, with the approval of Lanier, whereby the remaining general partners and the estate of Higginson compromised and settled all matters between them and the capital contributed by the deceased was transferred to the surviving general partners. Thereupon and on the same day, all of the remaining partners (including Lanier) entered into an agreement in writing supplemental to the partnership agreement of 1929 providing, among other things, for necessary changes in the capital interests of the general partners and the percentages of profits which each was entitled to receive. Necessary amending certificates were filed when the agreements of 1929 and of June 3, 1930, were executed. On October 21, 1930, Bowdoin furnished a special capital advance which all parties agreed should be repaid to him in preference to any distribution of assets to *any* of the partners.

The firm continued in business until December 15, 1930, when it was dissolved and Bowdoin was named as liquidator. The assets of the partnership, exclusive of claims against the general partners, were insufficient to pay the claims of creditors in full plus Lanier's capital contribution. All of the general partners, except Bowdoin, were insolvent and their financial status continued to remain the same throughout the period of liquidation and the subsequent proceedings for the partnership accounting. As liquidator, Bowdoin converted all partnership assets into cash, except claims against insolvent partners. With the proceeds, after giving effect to the net credit in his favor, which amounted to a contribution of upwards of sixty per cent of the amount of his capital contribution to

the firm, he paid the claims of all creditors of the firm (except the members of the partnership for capital contributions), and there remained a cash balance of $45,656.96. Out of this sum he paid Lanier $4,125 interest due upon his capital contribution owing at the date of dissolution. He thereupon paid to Lanier as special partner the balance of cash in his hands amounting to $41,531.96 to apply on the capital contributed by him to the firm.

Lanier claimed that he was entitled to recover the entire balance of his capital contribution from Bowdoin as the sole surviving solvent partner. The accounts were settled by the referee. No matters relating to the accounting are left open for consideration here except the findings and conclusions and the resulting decree: (1) That the general partners were required to contribute in proportion to their respective interests in the net profits of the firm, to a fund aggregating $508,468.04 (the balance unreturned to Lanier for his capital contribution) plus $103.50 costs, making in all $508,571.54, (2) that Bowdoin, by virtue of the insolvency of all the other general partners, should pay to Lanier the entire sum, (3) that Bowdoin was entitled to recover from the other general partners, in proportion to their several interests in the profits, the net credit in his favor of $844,670.40, and (4) that, upon Bowdoin paying Lanier the amounts above specified, Bowdoin should recover over from the other general partners, in similar proportion, the amount so paid. Upon appeal, the Appellate Division affirmed by a divided court.

The claim of the plaintiff, as stated and sustained by the referee, was that plaintiff "is entitled by the terms of the partnership agreement and the provisions of the New York statutes to exemption from all share of the partnership losses and a return of his capital intact, either out of the partnership assets or from the general partners individually; and * * * that where only one of the general partners is solvent the solvent partner must bear the entire burden." To sustain the claim, reliance was and must be placed upon the provisions of sections 10, 40, 71, 98 and 112 of the

Partnership Law and a construction thereof favorable to such contention. We need not pass upon what construction should be placed upon those provisions since, whatever construction may be placed upon them, they have no bearing upon the issue to be here decided. By their express terms, the rules there laid down for determining the rights and duties of partners and for distribution of assets are applicable only in the absence of an agreement between the partners on the same subject matter. There is no question here between third party creditors and the members of the partnership. A limited partnership is exclusively a creature of statute (Partnership Law, § 91) first recognized in this State in 1822 (Laws of 1822, ch. 244), and " the object to be accomplished * * * is to protect the special partner, and exempt him from a general liability and to place his capital alone at the peril of the business " (*Casola* v. *Kugelman*, 33 App. Div. 428, 433; affd. on opinion of PATTERSON, J., below, 164 N. Y. 608). The agreement between the partners in the case at bar does exactly that. In the absence of prohibitory provisions of the statutes or of rules of the common law relating to partnerships, or considerations of public policy, the partners of either a general or limited partnership, as between themselves, may include in the partnership articles any agreement they wish concerning the sharing of profits and losses, priorities of distribution on winding up of the partnership affairs and other matters. If complete, as between the partners, the agreement so made controls (*Levy* v. *Leavitt*, 257 N. Y. 461). The agreement here is not barred by law and furnishes a complete and legal scheme for distribution of assets and participation in profits and losses as between the partners and must control.

Article eleven of the agreement reads as follows:

" All losses and debts incurred by the firm shall be borne by the General Partners in proportion to their respective interests in the net profits as hereinbefore provided. Upon the termination of the partnership term or the dissolution of the partnership, the assets shall be distributed as follows:

" The Special Partner shall first receive back his cash contribution to the firm capital, together with any interest and any of his share of the profits then remaining unpaid;

" The General Partners shall then receive back their respective contributions to the copartnership, subject to the deduction of losses, if any, in proportion to the capital contributed by each, and the assets then remaining after the capital of each partner has been returned in full, shall be distributed to and among the General Partners in proportion to their participation in the profits of the firm."

The article thus provides for the payment of all losses and debts of the partnership by the general partners in proportion to their respective interests in the net profits to the exclusion of any participation in such payment by the special partner. It provides a plan for distribution of assets remaining after firm creditors are paid, the fund available therefor, if there are no firm assets, being made up by capital contributions by general partners " in proportion to their respective interests in the net profits " without reference to solvency or insolvency of the partners, mandating priority of payment of capital contribution to the special partner to the extent funds are available to pay the same, and later payment of capital contributions among the general partners, if funds are available, in proportions of the capital severally contributed. The article clearly provides that the liability of the several general partners shall be joint but not joint and several. There is no provision that the solvent partner must pay the shares of insolvent partners. The agreement is that each general partner shall pay only his proportionate share *of all losses and debts* in proportion to his interest in the net profits. Otherwise, the agreement contains no guarantee against Lanier's loss.

Assuming, without deciding, that the statute provided something different than that contained in the agreement, the parties intended that their contract would be exclusively controlling. That it was the intention to make a *complete agreement* as to the financial relations between all the partners

and a complete plan for participation in the profits of the partnership and for disposition of assets is not alone shown by article eleven, but also appears from articles ninth and sixteenth of the agreement and Exhibit C, the instrument amending the partnership articles after the death of Higginson. It cannot be successfully maintained that the parties intended to or in fact did leave anything to be implied. Dealing with the entire subject of distribution of assets after dissolution, as between themselves, they intended to include within the plan all the governing terms and conditions upon which final distribution should be made. The statute and the terms of the express agreement (articles eleven and sixteen) related to the same subject matter and, under those circumstances, there can be no importations from the statute, the effect of which would be to change the mutuality of the agreement. If anything is omitted, it must be implied from the contract itself. Provisions of the statute cannot be implied as part of the agreement so as to make a different contract from that which the parties intended nor override the agreement which the parties, in fact, made (*Levy* v. *Leavitt*, 257 N. Y. 461, 470).

The " losses and debts " of the firm consisted of debts to general third party creditors, special advances of the several partners exclusive of their capital contributions and capital contributions of the several partners. Payment of the capital contributions to the partners was secondary to payment of debts to third party creditors and to the advances by the several partners other than capital contributions. As between the partners, all of the " losses and debts " were payable by the general partners exclusively but only in proportion as they participated in the profits as above indicated. Concededly, Bowdoin was a participant in the profits to the extent of 27.04 per cent only and for that percentage of the " losses and debts " only was he liable. There is nothing Bowdoin did or omitted to do under the terms of the contract that gives Lanier any claim against him. Of the " losses and debts," he has paid more than he was required to pay.

The general partners were entitled to a decree settling the accounts of the partnership as made in accordance with the findings of fact and conclusions of law made by the referee. Bowdoin was entitled to judgment and to the immediate right to collect thereon against the several general partners for the amounts they should have contributed, as provided by the terms of the agreement, " in proportion to their respective interests in the net profits " of the partnership, to reimburse him, to the extent they are severally liable, for the net credit in his favor.

The judgments appealed from should be reversed, with costs in all courts, and the case remitted to the Special Term to proceed in accordance with this opinion. (See 282 N. Y. 611.)

CRANE, Ch. J., HUBBS and LOUGHRAN, JJ., concur; LEHMAN and FINCH, JJ., dissent; O'BRIEN, J., taking no part.

Judgments reversed, etc.