140 So.2d 321 (1962)
William S. FRATES, Appellant,
v.
Perry NICHOLS, William C. Gaither, Walter H. Beckham, Jr., William R. Colson and J.B. Spence, Appellees.
No. 61-427.
District Court of Appeal of Florida. Third District.
April 23, 1962.
Rehearing Denied May 15, 1962.
Paul & Sams, Miami, for appellant.
Mershon, Sawyer, Johnston, Simmons & Dunwody, W.O. Mehrtens, and Sam Daniels, Miami, for appellees.
Before HORTON, BARKDULL and HENDRY, JJ.
*322 PER CURIAM.
Appellant, plaintiff below, seeks review of a decree entered by the chancellor denying the relief sought in his complaint for injunction, accounting and appointment of a receiver.
This controversy arises out of a partnership agreement entered into between the parties to this cause and one other. The material portions of the agreement are as follows:
"ARTICLE II TERM
"This partnership shall become effective and begin on the first day of March, 1960, and shall continue until terminated as hereinafter provided.
"ARTICLE III CAPITAL
"3. Except by unanimous agreement of the partners, or upon dissolution, or as otherwise hereinafter provided, no part of the capital account of any partner shall be subject to withdrawal. No part of the capital account of any partner shall bear interest in his favor.
"ARTICLE IX DISSOLUTION
"1. The partnership may be dissolved by agreement of all partners at any time.
"2. The voluntary withdrawal or the death of a partner shall effect an immediate dissolution of the partnership, but the expulsion of a partner shall not dissolve the partnership as to the other partners, and they shall have the right to continue the partnership business by themselves or in conjunction with any other person or persons they may select.
"3. Any partner may withdraw from the partnership upon not less than sixty days written notice of his intention so to withdraw, given to the other partners, which notice shall specify the effective date of such withdrawal; provided, however, that the period of such notice may be shortened by the written consent of all partners, including the withdrawing partner; provided, further, that upon or prior to such effective date, the other partners shall have the right to elect in writing to continue the partnership business, and they may do so by themselves, or in conjunction with any other person or persons they may select.
"4. Any partner may be expelled from the partnership at any time, with or without cause, by written notice of such expulsion signed by all the other partners and served upon such partner not less than sixty days prior to the effective date of such expulsion which shall be stated in such notice; provided, however, that the period of such notice may be shortened by the written consent of all the partners, including the partner being expelled. Anything in this agreement contained to the contrary notwithstanding, if a partner has become entitled to the benefits of the provisions of Article VIII of this agreement, his expulsion under the terms hereof shall not, per se, terminate or impair any of the provisions of said Article VIII or any of his rights thereunder.
"5. The disposition of the interest in the partnership of a withdrawing partner, when the remaining partners elect to continue the partnership business, and the disposition of the interest in the partnership of an expelled or deceased partner, shall be governed as hereinafter provided for.
"ARTICLE X WITHDRAWAL OR EXPULSION OF A PARTNER
"1. Upon the withdrawal of any partner, if the remaining partners shall have elected to continue the partnership business, or upon the expulsion of any partner, his sole and only interest in the partnership and its business shall consist of the amount standing to his *323 credit in his individual capital account as of the effective date of his withdrawal or expulsion; the amount standing to his credit in his individual income account as of the effective date of his withdrawal or expulsion; and his share of the net fees thereafter received from cases settled or reduced to judgment prior to such effective date and in connection with which no retrial is required and which shall hereinafter be referred to as `accrued net fees'. Such withdrawing or expelled partner shall have no other interest of any nature or kind whatsoever in the partnership, its accounts, its cases then in process, or any business or fees thereafter received. In the event one or more members shall withdraw or be expelled, then the offices of the partnership shall be retained by the majority in number and interest. The remaining partners shall pay over or cause to be paid over to such withdrawing or expelled partner, in cash, the sum of the aforesaid amounts standing to his credit in his individual capital account and his individual income account within thirty days after the effective date of such withdrawal or expulsion, and shall pay over or cause to be paid to him, his share of such accrued net fee; provided, however, that at the option of the remaining partners, the amount standing to the credit of such voluntarily withdrawing partner in his individual capital account may by paid over to him at the times and in the manner following: one-fourth thereof on or before thirty days from the date of such withdrawal; one-fourth thereof on or before one year from the date of such first payment; one-fourth thereof on or before two years from the date of such first payment; and the remaining balance thereof on or before three years from the date of such first payment. In the event such option is exercised by the remaining partners said deferred payments shall be evidenced by the promissory note or notes of the remaining partners, and such deferred payments shall bear interest on the amount thereof remaining unpaid from time to time at three per cent (3%) per annum, which interest shall be paid annually. In the event of the voluntary withdrawal of a partner, if the other partners fail to exercise their right to continue the business of partnership, the affairs of the partnership shall be terminated and wound up as in the case of dissolution by consent of all the partners."
Following the taking of testimony, the chancellor rendered his decree denying the equitable relief sought by the appellant and, in said decree, found upon the undisputed evidence that the other partner to the agreement [who was not a party to this cause] "involuntarily" terminated his connection with the partnership in the fall of 1960; and that thereafter the appellant "voluntarily" withdrew from the association; and that the remaining partners, the appellees to this cause, elected to continue the partnership in accordance with the terms of the agreement. These findings of the chancellor are reviewed by this court with a presumption of correctness, [Atlantic Coast Line R. Co. v. Baynard, 112 Fla. 544, 151 So. 5; 2 Fla.Jur., Appeals, § 314] and it appears from the record that there is substantial, competent evidence to support these findings. Carolina Lumber Company v. Daniel, Fla.App. 1957, 97 So.2d 156; Stoller v. Jaffe, Fla.App. 1960, 125 So.2d 310.
The rights of the parties are fixed by the agreement. In order not to work an automatic dissolution of the partnership upon the "involuntary" withdrawal of a partner, all the parties had agreed that the partnership would continue subsequent to such withdrawal. Under the agreement, it took a unanimous consent of all except the "involuntarily" withdrawing partner to force his withdrawal. This unanimous consent carried with it the simultaneous act of *324 the remaining partners to continue the partnership as by their act of forcing the "involuntary" withdrawal they obligated themselves to pay out the capital account of the withdrawing partner. Counsel for the appellant urges strenuously that the act of participating in the unanimous vote, with the exception of the "involuntarily" withdrawing partner, did not ipso facto continue the partnership among the remaining partners, and there was in fact a dissolution of the old partnership and an organization of a new one. In a technical sense this may be correct, but this position is of no avail to the appellant because, by the agreement, he had agreed to the division of the assets of the partnership to be controlled by the terms of the agreement, and by his act had not only obligated himself to pay out the capital account of the withdrawing partner but had agreed to continue the relationship with the remaining partners. Parties to a partnership agreement may contract, with regard to the distribution of the assets of a partnership upon dissolution, in a manner other than that which ordinarily flows by operation of law. Lanier v. Bowdoin, 282 N.Y. 32, 24 N.E.2d 732; 2 Barrett & Seago, Partners and Partnerships, Ch. 9, § 1.2.
The appellant must be considered as having "voluntarily" withdrawn from the partnership which, under the agreement, will cause his capital to be returned upon a different schedule than that which is applied to a partner who "involuntarily" leaves the partnership. It is obvious that the appellant, in urging that the partnership was dissolved, is attempting to relieve himself from the terms of the agreement relative to the method of distribution of the assets upon a partner leaving "voluntarily". To buttress his argument that he was not a "voluntarily" withdrawing partner, he urges that he did not give the 60-day notice required by the agreement. This notice was for the benefit of the remaining partners and, as such, may be waived by them. 12 Fla.Jur., Estoppel & Waiver, § 6. The appellant, having "voluntarily" withdrawn from the partnership, granted to the remaining partners [appellees here] the authority to determine whether they would continue the business of the partnership, which decision would control the division of the partnership assets.
The appellant having withdrawn from the partnership "voluntarily" the appellees had the authority under the agreement to continue the partnership business as the remaining partners, which they did, and, therefore, the appellant is not entitled to receive any more than what he agreed to in Paragraph X of the agreement. The decree of the chancellor is therefore affirmed.
Affirmed.