OPINION OF THE COURT
Carolyn E. Demarest, J.
*756 In this action for the winding up of defendant Monchik Realty Co. (MRC), an accounting, and the appointment of a receiver, plaintiffs Frederick A. Polner and Arthur Polner move for summary judgment directing the winding up of MRC, the sale of MRC’s assets, the satisfaction of its liabilities, and the distribution of all remaining sums as provided in MRC’s partnership agreement. Said motion seeks, in connection with MRC’s winding up, the appointment of an independent receiver or liquidating trustee, and also seeks summary judgment directing defendants to provide a formal accounting of all partnership affairs of MRC. Plaintiffs seek, in the alternative, an order, pursuant to CPLR 6401, appointing a temporary receiver on the alleged grounds that defendants improperly remain in control of, and are wasting the partnership assets of MRC.
Defendants MRC, Howard Levine, Ruth Tabaco, Hal Monchik, Richard Monchik, Phyllis Monchik, Terry Albanese, and Charles Monchik (the MRC defendants) cross-move for summary judgment declaring that plaintiffs are only entitled to a return of the $1,200 contribution of their predecessor plus any undistributed profits due to them. Defendants Bonnie Monchik and Pam Monchik move, by order to show cause, pursuant to CPLR 2004, for an order permitting them to file an answer to plaintiffs’ complaint and to submit documents in response to plaintiffs’ motion and the MRC defendants’ cross motion for summary judgment. (The MRC defendants, due to the papers submitted by Bonnie Monchik and Pam Monchik, have withdrawn that branch of their cross motion which sought an order approving their proposed plan to transfer the assets of MRC to a successor entity, Monchik Properties, LLC.)
On January 8, 1973, the limited partnership of MRC was formed by four general partners, who were brothers, and 12 limited partners, who were relatives of the general partners. On that date, the general and limited partners executed a partnership agreement and a certificate of partnership. The partnership agreement provided that MRC was formed for the purpose of taking title to 869-891 Stanley Avenue, in Brooklyn, New York, which had been previously purchased by the general partners, in the name of Monchik Bros, (which was a general partnership that had the same four individuals as its general partners), acting as nominee for MRC. The certificate of partnership provided that the character of the partnership’s business was to carry on the general realty business and that MRC’s principal place of business was at 869-891 Stanley Avenue.
*757 As set forth in paragraph 3 of the partnership agreement and paragraph 6 of the certificate of partnership, each of the general partners agreed to make a capital contribution to the partnership of $1,200, and the 12 limited partners agreed to contribute a total of $25,200, with the amounts contributed by each of them ranging from between $750 to $2,250. Paragraph 3 of the partnership agreement further provided that “[e]ach of the General Partners shall be entitled to a 4% interest in and to the partnership assets in consideration of their foregoing capital contributions.” Said paragraph also provided that “[e]ach of the Limited Partners shall be entitled to 2xh% interest in and to the partnership assets for each $750.00 of their capital contributions.” In addition, the partnership agreement set forth that “[t]o the extent that any of the partners, General or Limited, have already advanced to the nominee [Monchik Bros.] sums in excess of their required capital contributions, said excess shall be returned to such partner.”
Pursuant to paragraph 4 of the partnership agreement and paragraph 9 of the certificate of partnership, each of the limited partners was entitled to annually receive a share of 21k% of the net profits of the partnership for each capital contribution of $750 invested in the partnership, and each of the general partners was entitled to annually receive 4% of the net profits of the partnership. Paragraph 6 of the partnership agreement and paragraph 10 of the certificate of partnership permitted assignment of the limited partners’ respective interests, giving the assignee the same rights and privileges as the limited partners.
Paragraph 8 of the partnership agreement provided that the partnership would only continue until January 8, 2003, at which time it would be dissolved, pursuant to the provisions of law. It stated that
“upon dissolution of the partnership the assets thereof shall be sold and liabilities shall be satisfied, and all sums remaining thereafter shall be shared as among the General and Limited Partners in accordance with the percentage of their interest as hereinbefore set forth, namely 4% to each of the General Partners, and 21k% for each sum of $750.00 invested by each Limited Partner.”
Paragraph 9 of the partnership agreement also provided, in pertinent part, that “upon such . . . dissolution the Limited Partners shall be entitled to receive 21k% of the net assets for *758 each sum of $750.00 invested by him, which shall be accepted in full satisfaction for the contribution made to the partnership.”
The certificate of partnership, in paragraph 5, similarly provided that the term for which the partnership was to exist was from January 8, 1973 to January 8, 2003. With respect to such dissolution, however, it only generally stated, in paragraph 8, that “[t]he contribution of each Limited Partner is to be returned to him upon the dissolution of the partnership out of the partnership assets.” It further provided, in paragraph 14, as follows:
“In the event of the termination or dissolution of the partnership, the interest of any Limited Partner in the partnership shall be returned to him, in cash, out of the partnership assets and he shall not be entitled to demand and receive property other than cash in return for his contribution.”
By deed dated April 30, 1974, Monchik Bros, conveyed title to the 869-891 Stanley Avenue property to MRC. Another parcel which adjoined that property, 2300-2322 Linden Avenue, which had been purchased by Monchik Bros, at the same time as the 869-891 Stanley Avenue property, was conveyed to Shepher Distributors & Sales Corp. Shepher was a separate partnership which was formed and controlled by members of the Monchik family. MRC also later acquired two other properties, i.e., 870-892 Stanley Avenue in 1975 and 835-887 Essex Street in 1980. These properties were leased to Shepher.
The partnership operated for the term of 30 years, as provided in the partnership agreement and certificate of partnership, with income distributions made to the general and limited partners in accordance with their respective interests. All of the four general partners and some of the limited partners have died. Lillian Polner was a limited partner who had contributed $1,200 in 1973 to MRC, and had received, in accordance with paragraph 4 of the partnership agreement and paragraph 9 of the certificate of partnership, four percent of the annual net profits of the partnership. In 2002, Lillian Polner died, and pursuant to her last will and testament, her sons, the plaintiffs herein, succeeded to her interest in MRC.
Following January 8, 2003, the date upon which MRC was to dissolve, pursuant to paragraph 8 of the partnership agreement and paragraph 5 of the certificate of partnership, plaintiffs demanded that MRC’s assets be sold, that its liabilities be satisfied, and that its net assets be distributed to the partners. This *759 did not occur. Rather, a dispute arose as to the compensation due to plaintiffs with respect to their interest in MRC upon its dissolution. Consequently, on June 23, 2004, plaintiffs brought this action as against the 12 defendants herein, who consist of MRC, the surviving original limited partners, and the successors-in-interest to the deceased general and limited partners.
Defendants Bonnie Monchik and Pam Monchik are successors-in-interest to 25% of the general partnership interest and 24% of the limited partnership interest of MRC. Due to an admitted oversight on the part of the, law firm of Cullen & Dykman LLB which represents the MRC defendants, the answer interposed on behalf of the MRC defendants failed to include Bonnie Monchik and Pam Monchik as answering defendants. Due to a conflict of interest, Bonnie Monchik and Pam Monchik have now hired their own attorney, and they seek, by their motion, to interpose an answer and papers in response to plaintiffs’ motion and the MRC defendants’ cross motion. Since neither plaintiffs nor the MRC defendants oppose this motion, and the delay was not willful or lengthy, and did not cause any prejudice to any party, the granting of this motion is warranted (see CPLR 2004; Santos v City of New York, 269 AD2d 585, 585 [2000]).
In addressing plaintiffs’ motion, it is noted that it is over two years since the dissolution of MRC was required pursuant to paragraph 8 of the partnership agreement and paragraph 5 of the certificate of partnership. As limited partners, plaintiffs have the statutory right to a dissolution and winding up decree of the court (Partnership Law § 99 [1] [c]; § 105 [4] [a]). Plaintiffs’ motion, insofar as it seeks an order decreeing the winding up of MRC, must, therefore, be granted (see Partnership Law §§ 68, 99 [1] [c]; § 105 [4] [a]).
With respect to plaintiffs’ compensation upon such dissolution and winding up, plaintiffs contend that pursuant to paragraphs 3, 8, and 9 of the partnership agreement, they are entitled to be paid 2x/2% of the net partnership assets for each $750 of the capital contribution invested by Lillian Polner, which amounts to a four percent interest in the net assets of MRC. The MRC defendants, in opposition to plaintiffs’ motion and in support of their cross motion, contend that under paragraphs 8 and 14 of the certificate of partnership plaintiffs are only entitled to a return of Lillian Polner’s original $1,200 capital contribution.
The MRC defendants rely upon Partnership Law § 112 (1), which sets forth the scheme for distributing partnership assets *760 after dissolution. It provides that, following payment to creditors, the limited partners are to be paid “in respect to the capital of their contributions” (Partnership Law § 112 [1] [c]). The MRC defendants point out that capital “is defined as the aggregate of the sums contributed by the partners for the purpose of commencing or carrying on the partnership business and intended to be risked in the business” (Rosen Trust v Rosen, 53 AD2d 342, 354 [1976], affd 43 NY2d 693 [1977]). They thus contend that since plaintiffs’ predecessor, Lillian Polner, made only a $1,200 contribution to the partnership, and put that sum at risk, plaintiffs are only entitled to payment, under Partnership Law § 112 (1) (c), of $1,200.
The MRC defendants’ reliance upon Partnership Law § 112 (1) (c), however, is misplaced. While Partnership Law § 112 (2) provides that “limited partners share in the partnership assets in respect to their claims for capital... in proportion to the respective amounts of such claims,” this provision is expressly made “[s]ubject to any statement in the certificate or to subsequent agreement.” Thus, the provisions of Partnership Law § 112 apply only absent a valid subsequent agreement by the limited partners as to distribution upon winding up. If such an agreement is made and is complete, as among the partners, it controls (see Lanier v Bowdoin, 282 NY 32, 38 [1939]).
The MRC defendants, however, claim that the partnership agreement was executed before the certificate of partnership. They contend that, therefore, there was no valid “subsequent agreement” under Partnership Law § 112 (2) because the partnership had not yet been established when the partnership agreement was executed.
The MRC defendants’ contention is without merit. Both the partnership agreement and the certificate of partnership are dated January 8, 1973, and no affidavit attesting to which one of these documents was actually signed first has been submitted by the MRC defendants. While it is noted that the certificate of partnership was actually notarized on January 8, 1973 and the partnership agreement was dated “as of’ January 8, 1973, and refers to “the Certificate of Limited Partnership executed by the parties” (emphasis supplied), the issue of which one of these documents was actually executed first on that same day, is of no moment. These two documents were executed at substantially the same time by the same parties, concern the same subject matter, and refer to each other. Consequently, they were contemporaneous writings, forming part of the same transac *761 tian and their provisions must be read and interpreted together and harmonized (see This Is Me, Inc. v Taylor, 157 F3d 139, 143 [2d Cir 1998]; Sea Spray Holdings, Ltd. v Pali Fin. Group, Inc., 269 F Supp 2d 356, 360 [SD NY 2003]; Nau v Vulcan Rail & Constr. Co., 286 NY 188, 197 [1941]; Sharper Props. Enters., Inc. v Hubbard Sand & Gravel, Inc., 12 AD3d 494, 495 [2004]).
In accordance with Partnership Law § 112 (2), the partnership agreement must be read together with the contemporaneously executed certificate of partnership, and the distribution of assets upon dissolution must be in compliance with the terms of such partnership agreement, rather than pursuant to statute. “Provisions of the statute cannot be implied as part of the agreement so as to make a different contract from that which the parties intended nor override the agreement which the parties, in fact, made” (Lanier, 282 NY at 40).
With respect to the terms of the partnership agreement, it is noted that in the absence of prohibitory statutory provisions, the partners of a limited partnership “as between themselves, may include in the partnership articles any agreement they wish concerning the sharing of profits and losses, priorities of distribution on winding up of the partnership affairs and other matters” (Lanier, 282 NY at 38; see also Urban Archaeology Ltd. v Dencorp Invs., Inc., 12 AD3d 96, 102 [2004]). “If complete, as between the partners, the agreement so made controls” (Lanier, 282 NY at 38).
Here, as discussed above, paragraphs 8 and 9 of the partnership agreement specifically address the subject of the distribution of assets after dissolution and provide that, upon dissolution, a limited partner is entitled to receive 21/2% of the net assets for each sum of $750 invested by him or her. These provisions of the partnership agreement are not barred by law and the partnership agreement furnishes a complete and legal scheme for the distribution of partnership assets as between the partners upon the dissolution of MRC. The specificity of the partnership agreement demonstrates the intention to include therein all the governing terms and conditions upon which the final distribution upon dissolution of MRC should be made. Such partnership agreement, therefore, fixes and controls the rights of the partners (see Lanier, 282 NY at 38; Urban Archaeology Ltd., 12 AD3d at 102; Carella v Scholet, 5 AD3d 972, 974 [2004]; Gabay v Rosenberg, 29 AD2d 653, 654 [1968], affd 23 NY2d 747 [1968]).
The MRC defendants contend, however, that paragraphs 8 and 9 of the partnership agreement should be disregarded. They *762 argue that these paragraphs are inconsistent with and overridden by the terms of paragraphs 8 and 14 of the certificate of partnership. Such argument is rejected. There is no requirement that the certificate of partnership set forth the partnership’s formula for distributing net assets, and, here, the certificate of partnership does not contain the detail stated in the partnership agreement as to the postdissolution distribution of assets.
Paragraph 8 of the certificate of partnership only generally provides for the return of the limited partner’s contribution from partnership assets. It does not set forth a formula for calculating the limited partner’s compensation upon dissolution, as does the partnership agreement. In fact, the provision in the certificate, which is consistent with Partnership Law § 105 (2), that a limited partner is entitled to the return of his or her contribution upon dissolution, in no way precludes a limited partner from sharing in remaining assets following satisfaction of all liabilities, which would statutorily include return of the capital contributions of all partners (see Partnership Law § 112). It is noted, however, that paragraph 9 of the partnership agreement specifically provides that upon dissolution the specified portion of “net assets” “shall be accepted [by the Limited Partners] in full satisfaction for the contribution made to the partnership” in derogation of Partnership Law § 112, the reasonable inference being that it was contemplated that such assets would easily exceed the sum of the original contributions of the partners and, if not, the limited partners would share the loss.
The MRC defendants also misconstrue the general language of paragraph 14 of the certificate of partnership that “[i]n the event of the . . . dissolution of the partnership, the interest of any Limited Partner shall be returned to him, in cash, out of partnership assets.” The meaning of this provision, when read in its entirety together with the partnership agreement, is that the interest of any limited partner must be returned to him or her “in cash,” i.e., no “property other than cash” may be demanded or received. The inclusion of paragraph 14 in the certificate may have merely been a formality in compliance with Partnership Law § 105 (3), or it may have had a more particular purpose in light of the occupancy of MRC Properties by interests associated with only some of the limited partners. In any case, the provision does not preclude effectuation of the specific directions contained in the partnership agreement. The two para *763 graphs contained in the certificate which are cited by defendants cannot be read out of context to contradict and invalidate the far more specific language of paragraphs 8 and 9 of the partnership agreement.
“The proper interpretation of a contract is a question of law for the court” (Harris Trust & Sav. Bank v John Hancock Mut. Life Ins. Co., 970 F2d 1138, 1147-1148 [2d Cir 1992], affd 510 US 86 [1993]). “Where the intention of the parties is clearly and unambiguously set forth, effect must be given to the intent as indicated by the language used” (Slatt v Slatt, 64 NY2d 966, 967 [1985]). Moreover, to the extent any inconsistency may exist, the partnership agreement “controls as it is the more specific of the two” (Goldberger v Sonn, 179 AD2d 573, 574 [1992]). Furthermore, the MRC defendants’ construction of paragraphs 8 and 14 of the certificate of partnership would render meaningless paragraphs 3, 8, and 9 of the partnership agreement “contrary to the accepted canon that a contract should not be interpreted so as to render a provision meaningless” (Audino v Lincoln First Bank of Rochester, 105 AD2d 1091, 1093 [1984], affd 65 NY2d 631 [1985]). The court will not rewrite the parties’ agreement.
While the MRC defendants rely upon Matter of Trustco Bank, N.A. v Strong (261 AD2d 25, 26-27 [1999]) and Arno Mgt. Corp. v 115 E. 69th Assoc. (173 AD2d 258, 259-260 [1991]) in arguing that the information contained in the certificate of partnership is controlling and that its terms must, therefore, prevail over those contained in the partnership agreement, such reliance is misplaced. In those cases, third parties were misled by information contained in a publicly filed certificate of partnership (see Matter of Trustco Bank, N.A., 261 AD2d at 26-27; Arno Mgt. Corp., 173 AD2d at 260). Here, in contrast, no third party was misinformed by the certificate of partnership and there is no issue raised between third-party creditors and members of the partnership. Rather, this action is between the partners (and those who have succeeded to their interests), who signed the partnership agreement, and involves only the respective interests of the partners as among themselves (see Lanier, 282 NY at 38). As previously stated, “[A]s between the partners, the agreement. . . made controls” (id.).
Furthermore, the MRC defendants’ construction of the partnership documents is inconsistent with prior bookkeeping over the course of MRC’s 30-year term, as objectively manifested by MRC’s United States partnership return (form 1065) and *764 Schedule K-ls issued to Lillian Polner from 1999 through 2002 (see Schechter Assoc. v Major League Baseball Players Assn., 256 AD2d 97, 97 [1998]). The Schedule K-ls, which were prepared by MRC’s accountant and filed under the authority of MRC’s “Tax Matters Partner,” defendant Hal Monchik, for these years contain figures ranging between 3.17% and 4.82% for her “Ownership of capital.” Thus, they support plaintiffs’ claim of a four percent ownership interest in MRC. These are admissions binding upon MRC (see id. at 98).
The MRC defendants further assert, in support of their cross motion, that when, on January 8, 1973, the general partners, in the name of Monchik Bros., purchased the 869-891 Stanley Avenue property and the adjoining 2300-2322 Linden Avenue property for $1,150,000, they financed this purchase by $1,000,000 from mortgage proceeds, a $50,000 down payment from Monchik Bros., and a $100,000 certified check from Monchik Bros. They claim that, in doing so, the general partners made excess contributions which must be repaid pursuant to paragraph 8 of the partnership agreement which provides that, before net assets may be distributed, “liabilities” must be paid. Relying upon the inclusion, in Partnership Law § 112 (1), of payments of capital to general partners as one of the “liabilities” of the partnership that is entitled to payment upon dissolution, the MRC defendants argue that the successors of general partners must be repaid for their excess contributions in connection with their 1973 purchase of the aforesaid properties prior to any distributions to plaintiffs.
Initially it is noted, with respect to the MRC defendants’ claim of unpaid excess contributions made by the general partners, that the $1,150,000 purchase price included not only the 869-891 Stanley Avenue property, but also included the 2300-2322 Linden Avenue property, which is not owned by MRC. Furthermore, the MRC defendants have not submitted sufficient evidence to support their claim of outstanding capital contributions. Such conclusory assertion is unsubstantiated by any documentary evidence. There are no records reflecting any outstanding liability of the partnership for any excess advances to Monchik Bros, in 1973 that have not been returned. The MRC defendants, in response to plaintiffs’ discovery demands, have failed to produce any such evidence.
Indeed, the submitted documentary evidence belies the MRC defendants’ claim of unpaid excess contributions by the general partners. MRC’s “Balance Sheets per Books,” contained in *765 Schedule L to its United States partnership return of income, for 1999-2003 reflect no liability for any unpaid advances made by the general partners in excess of their required capital contributions. In this regard, the MRC defendants have submitted the affidavit of accountant Stephen Lepselter, who states that he only recently became aware of the general partners’ $150,000 contribution in cash toward the purchase of the two parcels of real property and that he, therefore, never reflected any such liabilities in the tax returns for MRC. His equivocal statement that these tax returns, consequently, “do not reflect one way or the other whether all or a portion of these excess contributions were repaid,” does not constitute evidentiary proof that any excess contributions by the general partners were not repaid. It is further noted that the purchase of 869-891 Stanley Avenue was effected prior to the creation of the partnership. The partnership agreement expressly provides that “[t]o the extent that any of the partners, General or Limited, have already advanced to the nominee sums in excess of their required capital contributions, said excess shall be returned to such partner” (para 3). Presumably, this was done promptly upon the formation of the partnership. Any additional sums provided should have been recorded in the books and records required pursuant to paragraph 11 of the agreement. However, if competent proof of unpaid debts or loans (see para 10 of the agreement) is submitted in the course of an accounting, such debts must be satisfied.
Thus, the court finds that contrary to the MRC defendants’ contentions, plaintiffs are entitled to a four percent interest in the assets of MRC upon its dissolution, and are not limited to a recovery of Lillian Polner’s initial investment of $1,200. The MRC defendants’ cross motion must, therefore, be denied.
Insofar as plaintiffs’ motion seeks a formal accounting, it is noted that pursuant to Partnership Law § 99 (1) (b), a limited partner has a statutory right to a formal account of partnership affairs (see Matter of Brandt, 81 AD2d 268, 282 [1981]). An accounting is, therefore, directed (see Goergen v Nebrich, 4 AD2d 526, 527 [1957]).
Plaintiffs’ motion also seeks the appointment of an independent receiver. Plaintiffs contend that the MRC defendants should not be permitted to wind up MRC because they have a conflict of interest due to their ownership of MRC’s tenants, which pay MRC no rent. The determination of this issue will be deferred for resolution following further oral argument.
*766 Accordingly, plaintiffs’ motion is granted insofar as it seeks summary judgment directing the winding up of MRC, the sale of MRC’s assets, the satisfaction of its liabilities, and the distribution of all remaining sums as provided in MRC’s partnership agreement. Said motion is also granted insofar as it seeks summary judgment directing defendants to provide a formal accounting of all partnership affairs of MRC. The determination of plaintiffs’ motion, to the extent that it seeks the appointment of an independent receiver, is deferred pending oral argument. The motion by Bonnie Monchik and Pam Monchik for leave to file a late answer is granted. The MRC defendants’ cross motion for summary judgment declaring that plaintiffs are only entitled to a return of the $1,200 contribution of their predecessor plus any undistributed profits due to them is denied.