In the Matter of R. H. Macy & Co., Inc., et al., Petitioners, against Spencer E. Bates et al., Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, June 13, 1952.

*Harry J. Rudick* and *R. Palmer Baker, Jr.,* for petitioners.

*Nathaniel L. Goldstein, Attorney-General* (*Wendell P. Brown, Solicitor-General,* and *Philip J. Fitzgerald* of counsel), for respondents.

Coon, J. This is a proceeding under article 78 of the Civil Practice Act to review a determination of the State Tax Commission which construed a deed and a lease to be in fact a mortgage and subject to the mortgage recording tax.

Under date of March 30, 1949, R. H. Macy & Co., Inc., (hereinafter called " Macy ") conveyed by standard form bargain and sale deed, without reservation, real estate in the county of Westchester, consisting of its White Plains store,

to The Mutual Benefit Life Insurance Company (hereinafter called " Mutual "), for a consideration of $3,200,000. Under date of April 1, 1949, Mutual executed a lease of the same property to Macy. Both instruments were recorded in Westchester County in the book of deeds. The terms of the lease pertinent here were fairly and concisely summarized by counsel during the proceedings before the Tax Commission as follows: " The lease provides for a term of twenty-five years with the privilege of renewal for two renewal periods aggregating thirty-five years. The rent for the first twenty-five years is $194,000 and for the renewal periods it is $36,000 a year. The lease provides that the tenant is to pay the taxes and assessments; keep the property in repair, indemnify the landlord against claims for damages arising out of the use of the premises, keep the property covered by insurance of the type carried on such property. It provides that if there is an insurable loss of not more than $100,000 the tenant is to adjust the loss and, if more, the tenant and landlord adjust the loss. In the case of condemnation of the property out of our hands, total or partial, there are provisions for the dividing of the condemnation award between the tenant and landlord on the basis of the landlord's interest under the lease and the landlord's reversionary interest and the tenant's interest under the lease, including the tenant's right to purchase. It is provided that the tenant may make structural alterations but, if more than 50% of the floor space is involved, the tenant is to get the permission of the landlord and, if expenses of more than $50,000 are involved, the tenant is to make the alterations in such a way that the building will be worth at least the value before the alterations were made. The tenant has an option to purchase, but is not required to purchase the property, at three specific dates during the term of the lease and only these three dates; one at the end of the first twenty-five years at the price as stated in the lease; two, at the end of the first extended term which would be at the end of the forty-fifth year and again at the final termination of the lease, at the end of the sixtieth year. On both the last two options the price would be the appraised value of the land without any reference to any value of the building, or $600,000 whichever is less. Then on the termination of the lease the tenant will restore this property to the landlord in as good condition as before, allowing for reasonable wear and tear excepted, and all improvements that have been made."

These two instruments are the only instruments passed between the parties, and there is no evidence of any " side agreement " or arrangements of any kind not contained in the terms of these two instruments.

Section 320 of the Real Property Law provides: " A deed conveying real property, which by any other written instrument, appears to be intended only as a security in the nature of a mortgage, although an absolute conveyance in terms, must be considered a mortgage; and the person for whose benefit such deed is made, derives no advantage from the recording thereof, unless every writing, operating as a defeasance of the same, or explanatory of its being desired to have the effect only of a mortgage, or conditional deed, is also recorded therewith, and at the same time."

Section 250 of the Tax Law provides, in part: " The term ' mortgage ' as used in this article includes every mortgage or deed of trust which imposes a lien on or affects the title to real property, notwithstanding that such property may form a part of the security for the debt or debts secured thereby."

Section 253 of the Tax Law provides for the familiar recording tax on mortgages.

It is the contention of the petitioners that this transaction represents a bone fide sale and a bona fide lease of the property in question, and that a mortgage transaction was not intended by the parties and did not take place, either in form or substance. Respondents contend that the two instruments, while in form a deed and lease, in fact constitute a mortgage within the meaning of article 11 of the Tax Law. Thus is presented the only issue to be determined.

It is without question, and petitioners do not contend otherwise, that the substance rather than the form of the transaction controls. (*Matter of Drobner* v. *Chapman,* 275 App. Div. 520.) This rule does not, however, permit respondents to arbitrarily classify a transaction as a mortgage merely because in some of its aspects it resembles a mortgage, without some evidence that the parties intended a mortgage transaction, and particularly is this so when other aspects of the transaction are wholly inconsistent with the mortgage conception. Basically the question is one of intention. Here all of the extrinsic evidence is to the effect that both parties considered this transaction to be exactly what is purports to be, i.e., a sale and a lease.

It is the testimony that neither Macy nor Mutual at any time considered a loan, and that a loan or mortgage was not discussed. Mutual recorded the purchase as investment real estate on its

books, and on its annual statements filed with various State Insurance Departments. It recorded the payments made by Macy as "rents." Following the sale Macy removed the real estate from its books as an asset and it was not thereafter reported as an asset in audit reports made to the public through certified auditors. The cost of the property to Macy was $3,265,000, and the sale price was $3,200,000, which both parties considered full value, and which all the evidence indicates was approximate full value. Common sense and common business practice dictates that no mortgage could be obtained for full value, and the statutes of the State of New Jersey forbid Mutual from making such a loan.

A mortgage, whether in form or equitable, imports a debt or obligation to be secured, due from the mortgagor to the mortgagee, a right to foreclose, and the reciprocal right to redeem. Without those elements there can be no mortgage, and they are absent here.

Respondents rely principally upon two factors — that Macy remained in possession, and had the right to repurchase. Of course, the possession was pursuant to the terms of a lease, in itself a perfectly legitimate transaction. The option to repurchase was not absolute and available at any time, as in cases cited. The option could be exercised only at stated dates. It is without dispute that upon delivery of the deed Macy relinquished absolute title in fee to the premises, and for a period of twenty years had no means whatever of regaining title, by option to repurchase or otherwise.

One other point deserving of mention. It is urged that the difference in rental after the first twenty-five-year period — from $194,000 to $36,000 per year — and the low price in the option to repurchase at renewal periods, is indicative that the transaction was not a genuine sale. There is credible evidence that this is due to anticipated obsolescence of the building on the premises, and is not unusual for property of this type. There is no evidence to the contrary.

It is significant to note that the Legislature, in section 250 of the Tax Law, has expressly provided that an executory contract of sale under which the vendee has possession shall be considered a mortgage for the purposes of article 11 of the Tax Law. No such provision is made relating to sales and lease backs. If such transactions are to be taxable as such, it is a legislative matter. If they are to be taxed as a "mortgage" it must be apparent that the parties intended the transaction to be a mortgage, and this must appear by very satis-

factory evidence. (*Reich* v. *Dyer,* 180 N. Y. 107; *Wilson* v. *Parshall,* 129 N. Y. 223.)

We think this record fails to disclose any substantial evidence to sustain the determination of respondents. The determination should be annulled, with $50 costs.

FOSTER, P. J., HEFFERNAN, BREWSTER and BERGAN, JJ., concur.

Determination annulled, with $50 costs.