OPINION OF THE COURT
Eli Wager, J.
In this action for a judgment declaring the parties’ rights under a contract and for an injunction, the defendants Froccaro and Scotto seek a preliminary injunction similar *353 to that promulgated in First Nat. Stores v Yellowstone Shopping Center (21 NY2d 630). The plaintiff cross-moves for an order dismissing the defendants’ affirmative defense and counterclaims.
THE FACTS
The dispute between the parties involves construction of an agreement they entered into in August, 1981, and a subsequent modification entered into on August 27, 1983, but dated September 21,1983. Previously, in April of 1981, defendant Froccaro (together with defendant Scotto as a “silent partner”) entered into a contract with the then owner to purchase 40 acres of vacant land in the Village of Port Washington North for the sum of $1,100,000, paying $100,000 on account which they assert is a nonrefundable payment. When they were unable to obtain a mortgage loan from a bank for the balance, their attorney, defendant Lester, introduced them to plaintiff Boyarsky who agreed to pay $800,000 of the purchase price. A business certificate for partners (doing business as Dallas Realty Company) executed by Boyarsky and Lester (acting as the nominee of Froccaro and Scotto) was filed on August 17, 1981. The contract to purchase the realty was assigned to Dallas and Dallas purchased the property on August 20, 1981, with funds contributed by Boyarsky and Froccaro and Scotto pursuant to a written agreement which described Dallas as a partnership composed of Boyarsky and Lester as defendants’ nominee and states that the three have “entered into a financial arrangement to purchase * * * property” pursuant to the contract to sell assigned to Dallas. The agreement provides in relevant part as follows: Froccaro and Scotto were to invest $300,000 toward the $1,100,000 purchase price and Boyarsky $800,000; upon the sale of the property Boyarsky was to receive his original investment ($800,000) out of the first moneys deducted from the gross sales price and an additional $800,000 out of the next moneys from the gross sales price “representing his interest in the partnership;” the third $800,000 was to be split between Froccaro and Scotto and all net sales proceeds in excess of $2,400,000 were to be divided 75% to Froccaro and Scotto and 25% to Boyarsky; Froccaro and Scotto were to pay all closing costs and all maintenance *354 costs including taxes until such time as the property was sold; in the event the property was not sold within 24 months from the date Dallas acquired title Froccaro and Scotto were to transfer all their right, title and interest to the property to Boyarsky, but within that 24-month period they were to have an option to buy Boyarsky out for $1,600,000 plus 25% of the net proceeds in excess of $2,400,000 should the property be sold within four years thereafter. The agreement also gave Boyarsky “the right to borrow up to Six Hundred Thousand ($600,000.00) Dollars using the land as a first mortgage” and extended to him the right of first refusal other than “pending negotiations.” Froccaro and Scotto, however, had “exclusive right to sell the property on any terms they agree upon.”
It appears that Froccaro and Scotto failed to pay the real estate taxes and that the tax lien was sold in February, 1983 (at which time the taxes, penalties and interest amounted to $200,000), that the property was not sold within 24 months after Dallas took title and that at the request of Froccaro and Scotto an extension agreement was entered into on August 27, 1983. That agreement, noting the fact that $1,600,000 was then owing to Boyarsky and that Froccaro and Scotto did not wish to relinquish their rights in the land, provided that Boyarsky would grant a three-month extension through November 26, 1983, and additional three-month extensions at the option of Froccaro and Scotto up to August 26, 1986. Commencing with the second extension (effective November 27, 1983) Froccaro and Scotto were to pay Boyarsky interest in advance on his $1,600,000 capital investment in the property at 4% over the prime rate and to pay all past due real estate taxes on or before January 1,1984, Boyarsky to have the right to deny an additional extension if the real estate taxes were not paid. In addition, Boyarsky was to receive an additional $100,000 for every extension if the property were sold for more than $2,400,000.
It appears that an application submitted by Dallas and a builder to the Village of Port Washington North for a change of zoning to permit development of the property as “Planned Residential Development” was denied and that should a reapplication be granted the value of the property *355 would, according to Froccaro and Scotto, be “enormously increased.”
By letter dated January 6, 1983, Boyarsky’s attorney advised the defendants that Boyarsky was exercising his right to terminate their rights to the property on the ground that they had not made the payments of interest or of real estate taxes as required by the August 27, 1983 extension agreement. Boyarsky then commenced the instant action seeking a judgment declaring that he is the sole owner of the property and an injunction preventing the defendants from representing themselves as the owner and taking any action affecting title, use or occupancy.
In their answer, Froccaro and Scotto characterize the first (1981) agreement as a “mortgage loan agreement” and the August 27, 1983 extension as a “forebearance of payment of the mortgage loan.” They assert that they are the “fee owners” and Boyarsky is the “mortgagee” and that the deed and the agreements “were merely security for the mortgage loan made by Boyarsky to Froccaro and Scotto.” As a first counterclaim they seek a judgment pursuant to RPAPL article 15 declaring their rights accordingly. In a second counterclaim, they seek to enjoin Boyarsky from representing himself as the owner. In a third counterclaim they allege that the interest charged by Boyarsky upon the . $800,000 “he advanced under the Boyarsky Mortgage Loan Agreement as modified exceeds the rate permitted by Law” and they seek to enjoin Boyarsky from enforcing it. As a sixth counterclaim they seek a judgment declaring that if the “Mortgage Loan Agreement” is determined to be valid they “shall still have the option to pay Boyarsky all sums judicially determined then due under the Boyarsky Loan Agreement.” They have also interposed various cross claims against defendant Lester, alleging in essence that he breached his fiduciary duty as their attorney when he counseled them to execute the agreement knowing the rate of interest was usurious and that he acted at the direction of Boyarsky and was in fact an investor in his group.
THE INJUNCTION MOTION
Froccaro and Scotto seek an injunction pendente lite to “stay the running of the period within which [they] can pay to Boyarsky any sums that may be declared in this action *356 to be due and owing to him,” a stay they compare to the equitable injunctive relief afforded in landlord-tenant disputes to avoid a forfeiture of the leasehold (First Nat. Stores v Yellowstone Shopping Center, supra). They appear to analogize the extensions provided in the August 27, 1983 agreement to the notice and cure provisions of a lease and assert that their motion is timely under the Yellowstone rationale since the order to show cause containing a temporary restraining order is dated February 17, 1984, and the second extension was to run from November 27, 1983 to February 26, 1984.
Ignoring for a moment the propriety of applying a device formulated in the context of landlord-tenant law to the instant dispute, the threshold issue is whether the 1971 agreement and the 1983 extension can be construed as providing a cure period which can be tolled. In landlord-tenant law, the equitable relief of tolling the period in which to cure a default cannot be invoked where there is no basis in the lease for such relief (Wuertz v Cowne, 65 AD2d 528).
The original 1981 agreement provides no period in which to cure. Instead, it provides that title will be transferred to Boyarsky 24 months after Dallas acquires title in the event the property has not been sold and Froccaro and Scotto have not exercised their right to buy him out. The provision is akin to a conditional limitation which ipso facto terminates a lease (Murray Realty Co. v Regal Shoe Co., 265 NY 332).
The 1983 extension agreement substantially curtails the automatic forfeiture provisions of the original agreement, i.e., it provides for extensions, at the option of Froccaro and Scotto, of the period during which they must sell the property or buy Boyarsky out and grants to Boyarsky the right to deny their request for an extension only in the event they fail to pay the back taxes by January 1, 1984. The agreement does not provide that a failure to pay such taxes on January 1,1984, may be cured by payment within a specified time thereafter. Insofar as the period between the execution of the extension agreement and January 1, 1984, may be deemed a cure period, it is noted that under *357 Yellowstone (supra) a tenant’s failure to obtain a restraining order until after the cure period has run is fatal, since there is no judicial power to revive a cure period which has expired (Mann Theatres Corp. v Mid-Island Shopping Plaza Co., 94 AD2d 466). There is no cure provision in the event defendants fail to pay the additional interest on Boyarsky’s $1,600,000 “capital investment” on or before the first day of each extension period.
Since there is no cure provision in either agreement (other than the period in which to pay the taxes which expired prior to the date of the order to show cause), there is no time period which can be tolled by an injunction designed solely as a tolling device. Furthermore, it is apparent that defendants are presently incapable of curing their defaults, including payment of the $200,000 tax bill, that they will not be able to do so until such time as they obtain a change in zoning and sell the property and that they seek a stay solely for the purpose of affording themselves more time. A Yellowstone (supra) injunction is not available where a default cannot be cured (Childress v Lipkis, 72 AD2d 724), does not provide a license to withhold payments which are not the basis of the dispute (cf. Caspi v Madison 79 Assoc., 85 AD2d 583) and is surely not appropriate where its only purpose is to delay performance of a contractual obligation after the time for performance has already expired.
Accordingly, the motion for a Yellowstone (supra) injunction will be denied on these grounds alone, without consideration of the basic impropriety of applying landlord-tenant law to the facts of this case.
THE CROSS MOTION TO DISMISS THE COUNTERCLAIMS
As noted above, the defendants assert in their counterclaims that the agreement at issue constitutes a mortgage loan transaction and that it is unenforceable because the loan carries a usurious rate of interest. The plaintiff seeks dismissal of the counterclaims pursuant to CPLR 3211 (subd [a], par 1) (a defense founded on documentary evidence), urging that the agreements can only be construed as creating a partnership or joint venture to buy and sell the land for a profit.
*358 A partnership is defined as a contract of two or more persons to place their money, effects, labor or skill, or some or all of them, in lawful commerce or business, and to divide the profits and bear the loss in certain proportions (Pattison v Blanchard, 5 NY 186). Partners may include in the partnership articles practically any agreement they wish (Riviera Congress Assoc. v Yassky, 18 NY2d 540) and the agreement so made controls, if complete, as between the partners (Lanier v Bowdoin, 282 NY 32, rearg den 282 NY 611).
While a joint purchase of land does not make the owners copartners, it is well settled that a partnership may be created by an agreement relating to a single transaction in the sale or purchase of land and such a partnership is created where the lands are bought jointly for speculation, each party to share in the profits (Schneider v Brenner, 134 Misc 449; Gluck & Co. v Tankel, 24 Misc 2d 841). Thus, in Blair v Scimone (26 AD2d 751) a partnership or joint venture was discerned where the plaintiff, who had obtained an option to purchase land and who had trouble finding financing, entered into an agreement with the defendant pursuant to which the defendant contributed the larger portion of the purchase price of $310,000 and took an assignment of the option to protect the larger sums advanced. The defendant took title in his own name upon payment of $60,000 and execution of a purchase-money mortgage. When plaintiff was unable to pay the taxes or to pay his share of the expenses, defendant told plaintiff he was no longer a part of the transaction and sold the property for $650,000, indicating a profit of $300,000. The court, noting that a partnership or joint venture may be created by an agreement relating to a single transaction in the sale or purchase of land, held the transaction a joint venture, pursuant to which the defendant was secured by holding legal title to partnership assets and a 90% beneficial interest and that plaintiff’s default in paying taxes was too insignificant to warrant rescission.
Although the agreement in Blair (supra) and the one at issue here are similar in many respects, there are differences. In the first place, the agreement in Blair did not provide for a forfeiture in the event of a failure to pay taxes *359 and thus, rescission rather than enforcement was sought. Nor is there in Blair any provisions for a reconveyance to the plaintiff upon payment of a sum of money (see Macaulay v Porter, 71 NY 173). The presence of such provisions in the instant agreement raises an issue as to the real nature of the transaction. Even where a contract purports to be a partnership agreement, it may be a mere sham to hide the real relationship, e.g., a method adopted to pay a debt or wages, as interest on a loan or for other reasons (Greenstone v Klar, 69 NYS2d 548, mod 272 App Div 892).
A mortgage is defined as “ ‘[a]ny conveyance of land intended by the parties at the time of making it to be a security for the payment of money or the doing of some prescribed act’ ” (Burnett v Wright, 135 NY 543, 547, citing 2 Washburn, Real Property, p 43). Where loans are made and securities for repayment taken, the case is in equity and the rights of the parties may be established by parol (supra, at p 548). As a general rule, the form of the transaction is not conclusive (see Matter of Macy & Co. v Bates, 280 App Div 292) and any agreement in writing made by the owner of the land, upon a valid consideration, by which an intention is clearly shown that the land shall be security for an obligation, creates an equitable mortgage upon the land (2 Rasch, Real Property Law & Prac, § 1690). Thus, a deed absolute on its face if given for security is a mortgage by operation of law (Mooney v Byrne, 163 NY 86). A mortgage imports a debt or obligation to be secured, due from the mortgagor to the mortgagee, a right to foreclose and the reciprocal right to redeem (Matter of Macy & Co. v Bates, supra). The instant agreement gives reciprocal rights, which are somewhat similar to foreclosure and redemption, although if it is indeed a mortgage, Boyarsky would not be permitted to cut off the defendants’ redemption rights in any way but foreclosure (see Patrono v Patrono, 127 App Div 29).
However, the putative mortgagor must have a mortgageable interest in the property sought to be charged as security (59 CJS, Mortgages, § 13). Any interest in real property capable of passing by purchase or descent is capable of being encumbered by a mortgage (Mutual Life Ins. Co. v Shipman, 119 NY 324) including the interest of a *360 purchaser in possession of real property under a contract to purchase (Stoddard v Whiting, 46 NY2d 627). Thus, a contract to buy plus part performance makes the contracting party an equitable owner pro tanto (Elterman v Hyman, 192 NY 113), and an assignment of the contract creates an equitable mortgage when given as security for a debt (Marks, Maloney & Paperno, Mortgages and Mortgage Foreclosure in NY, § 2). In Stoddard, the plaintiff, who had entered into possession of realty under a contract to purchase it and who could not pay the purchase price when due, entered into an oral contract with the defendant pursuant to which the defendant advanced part of the price to the vendor, took title in his own name and executed a mortgage together with his bond and paid the balance from the proceeds. Plaintiff, who had the right to redeem, remained in possession until he failed to make payments to defendant at which time defendant took possession himself. The plaintiff then brought an action to determine his right to redeem. The court held that the contract to sell vested the plaintiff with equitable title, that a deed given as security may be a mortgage and that it does not matter whether legal title is held by the party wishing to mortgage the land or by a third party as his trustee who conveys at his request. Since the relationship of the parties was that of mortgagor-mortgagee, the plaintiff’s right to redeem could not be cut off without a strict foreclosure or foreclosure and sale in a court of equity.
As in Stoddard (supra), the parties alleging a mortgage in the instant case possessed a mortgageable equitable interest which they, like the plaintiff in Stoddard, allege they assigned as security for a debt, i.e., a major portion of the purchase price. There are differences, however, the most significant of which is the existence of the written agreement between Boyarsky and the defendants, labeled an agreement between partners, which appears to be a complete and integrated contract providing for contributions to the venture by all parties and a sharing of the profits over and above their respective contributions. If the few elements of the agreement reminiscent of an equitable mortgage are ignored, the transaction appears to be nothing more than a joint venture by three speculators in real *361 estate, one of whom was less convinced of the ultimate success of the enterprise than the other two. That all three are mere opportunists is evidenced by their current efforts to effect a forfeiture of the other’s investment launched after the anticipated riches failed to materialize.
Nevertheless, precisely because forfeitures are in-, volved and the law abhors a forfeiture, it is the duty of the court to interpret the agreement strictly in order to avoid such a result (Lyon v Hersey, 103 NY 264). Thus, the defendants should have an opportunity to try their counterclaims and to show, if they can, that the intent of the parties was as they allege. It is the substance rather than the form of a transaction which controls and the basic issue is intent (Matter of Macy & Co. v Bates, supra).
The cross motion to dismiss the counterclaims is denied.