■ CEMCO RESTAURANTS, INC., Appellant, v TEN PARK AVENUE TENANTS CORP. et al., Respondents. CEMCO RESTAURANTS, INC., Appellant-Respondent, v TEN PARK AVENUE TENANTS CORP., Respondent-Appellant, and SANDRA KARP, Respondent. —Order, Supreme Court, New York County (Beatrice Shainswit, J.), entered May 12, 1987, which vacated a temporary restraining order and denied plaintiff-appellant's motion for a preliminary injunction tolling the time to cure its alleged default under a lease agreement with defendant-respondent, unanimously affirmed, without costs.

Order of said court entered July 31, 1987, which granted defendant-respondent-cross-appellant's motion for preliminary injunction and which denied its motion for partial summary judgment modified, on the law, to grant partial summary judgment dismissing the first and sixth causes of action in the complaint, and to grant judgment in favor of defendant on the second cause of action, declaring that plaintiff is not in compliance with the lease, and otherwise affirmed, with costs awarded to defendant-respondent-cross-appellant on this appeal and cross appeal.

Plaintiff, Cemco Restaurants, Inc. (Cemco), is the tenant of the restaurant space located at Ten Park Avenue in Manhattan under a long-term lease which expires in January 1995, and which was assigned to Cemco in 1981. Defendant, a cooperative apartment corporation, succeeded to the interests of the original landlord, the Community Church, which had entered into this lease with plaintiff's predecessor, also a restaurant, in 1972. At that time, the property was a residential hotel known as Hotel Ten Park Avenue.

The 40-page rider to the lease specifically recites that the hotel tenants and guests "are persons of conservative standards and taste; and the owner of the land and building is a religious institution". It further recites: "Tenant agrees that during the entire term of this lease it will conduct and operate in the demised premises a high class restaurant, dining room and cocktail lounge and bar in a dignified man-

ner in keeping with the character of the hotel, the ownership thereof and its operation; and in such a manner to attract the custom of persons of similar tastes and standards to those of the guests and tenants of the building."

The lease imposes a number of restrictions on operation of the restaurant. To insure that the bar would be operated "in a quiet and dignified manner", the tenant agreed that the bar "shall not be kept open for business when the dining room is closed." Only piano music or prerecorded, incidental music "for nondancing purposes, such as, for example 'Mu[z]ak'," is permitted during hours when the restaurant is open. For "special parties such as weddings," the lease permits "music of piano and string, but no 'brass.' " However, at no time may any music "be performed in such a manner and to such an extent as to disturb any other tenant or guest of the building."

The lease also bars use of the premises either by the tenant or the tenant's assignees for any business other than a restaurant. One provision, which is now disputed by the parties, allegedly contains a covenant forbidding the tenant to operate "a singles bar, disco or the like". The lease further recites that the "nature and character of the business to be conducted by the tenant are of such importance that the landlord would suffer irreparable injury" and, therefore, it was agreed that the landlord would be entitled to an injunction in addition to other remedies for any violation of the lease.

In late 1984, defendant alleges, plaintiff began presenting live entertainment and excessively loud music in violation of the lease. By letter dated May 8, 1985, plaintiff was notified of the alleged violations and discussions between the parties ensued regarding modification of the lease. However, plaintiff subsequently informed defendant that it would adhere to the lease as written and that no change was required. Despite this assurance, the alleged violations continued and defendant sent a warning to plaintiff on March 31, 1986, followed by a 20-day notice to cure to plaintiff on May 15, 1986. The live entertainment ceased, but in February 1987, plaintiff allegedly began to use the premises for late night, discotheque "parties" for which an admission fee was charged. On March 3, 1987, defendant again sent plaintiff a notice to cure, whereupon plaintiff instituted this action seeking a *Yellowstone* injunction and damages at law.

In its verified complaint, plaintiff alleged, as a first cause of action, that the notice to cure had not been served in accor-

dance with the terms of the lease and was therefore invalid, that the allegations in the notice to cure were untrue and, as a second cause of action, that plaintiff was entitled to a judgment declaring that it was in compliance and therefore not required to cure. The sixth cause of action for compensatory and punitive damages alleged that defendant had harmed plaintiff's business, that defendant's claims were frivolous and undertaken in bad faith in order to compel plaintiff to renegotiate the lease on more favorable terms or to force plaintiff out of the premises.

Following a hearing before Justice Shainswit, at which plaintiff's counsel insisted that there had been no violation of the lease, the temporary restraining order which had been issued was vacated. However, on appeal to this court, an interim stay pending appeal was granted, and plaintiff's time to cure pursuant to the notice to cure was tolled.

Within two weeks after plaintiff obtained a stay from this court, it began advertising live entertainment at the restaurant—a transvestite musical revue—to take place on Friday evenings from June 12 through July 31, 1987. Defendant presented a printed advertisement for the show to the court when it moved on June 17 for an injunction to prohibit plaintiff from operating or permitting live entertainment at the restaurant. Defendant also moved for partial summary judgment on the first, second, and sixth causes of action, citing plaintiff's flagrant violation of the lease restrictions. Justice Shainswit granted the injunction, noting that plaintiff "now admits that there is a musical show regularly being presented, as against what it claimed were simply private parties before." However, she denied the motion for partial summary judgment finding that there were issues of fact requiring trial.

We have reviewed the arguments raised by plaintiff in its appeal from the order vacating the temporary restraining order and denying its application for a *Yellowstone* injunction, and find them to be without merit. *(See, First Natl. Stores v Yellowstone Shopping Center,* 21 NY2d 630 [1968].) A tenant seeking a *Yellowstone* injunction must also convince the court "of his desire and ability to cure the defects by any means short of vacating the premises" *(Jemaltown of 125th St. v Betesh/Park Seen Realty Assocs.,* 115 AD2d 381, 382 [1st Dept 1985]). Plaintiff has not made the requisite showing of its willingness to cure the lease violations, which it denied existed, and the evidence of record raises considerable doubt as to plaintiff's good faith.

Defendants, on the other hand, have amply demonstrated

grounds for the injunctive relief sought. We need not reach the issue of the disputed lease provision which allegedly forbids operation of a discotheque or singles' bar. Plaintiff's claim that the restrictive covenants and provisions of the lease are ambiguous because they refer to "subjective" standards is baseless. The lease plainly and unambiguously forbids loud music at any time, operation of the bar while the restaurant is closed, or use of the premises for any business other than a restaurant. Defendant's private detective observed the bar in operation at a time when no food was being served or prepared. Affidavits from the tenant of a fifth-floor apartment in the building and two of the building's doormen attest to the fact that music emanating from the restaurant was audible beyond the demised premises, disturbing tenants and guests of the building. The night doorman averred that plaintiff's music caused the lobby to vibrate and was, therefore, clearly in violation of the lease.

Further evidence of blatant violation appears on the face of the printed advertisement for "Dress Up", the Richie Ridge transvestite musical revue. Plaintiff's attempt to expand the meaning of the words "conservative" and "dignified" as used in the context of the lease, to encompass such entertainment deserves no comment. Nor is the fact that this purports to be a "high-class" revue on a par with the Broadway musical La Cage Aux Folles of any significance. The lease permits the tenant to operate a restaurant and only a restaurant, not a Broadway theatre or a cabaret on the premises. Plaintiff's claim that defendant has permitted plaintiff to present such entertainment in the past is not supported by the record. Nearly two years before this action began, in May 1985, defendant notified plaintiff that it was in violation of the lease by using the premises as a "supper club featuring entertainment." Moreover, plaintiff is not licensed to operate a cabaret and, therefore, it may not do so without violating the lease covenant to operate the restaurant in accordance "with all applicable rules, laws and regulations". (See, Administrative Code of City of New York § 20-359 et seq.)

Defendant's other evidence is sufficient to show that it is likely to prevail on the merits, that plaintiff's conduct will cause irreparable harm, and that the equities favor granting defendant the injunctive relief sought. We also find, given this record, defendant was entitled to partial summary judgment.

Plaintiff has not refuted defendant's evidence that it breached the lease by operating an unlicensed cabaret and by permitting excessively loud music, therefore, it is not entitled

to judgment declaring that it is in compliance with the lease. Judgment should be entered in favor of defendant on this second cause of action *(Lanza v Wagner,* 11 NY2d 317, 334 [1962]; *McKechnie v Ortiz,* 132 AD2d 472 [1st Dept 1987]). The sixth cause of action for which plaintiff seeks $500,000 in compensatory and $1,000,000 in punitive damages should also be dismissed given the substantial evidence that defendant had bona fide grounds for complaint arising from the continuing lease violations by plaintiff. The first cause of action, challenging the validity of the notice to cure on the ground that it was not sent by certified mail, is frivolous inasmuch as plaintiff's letter of March 5, 1987 acknowledges receipt of the March 3, 1987 notice to cure which was hand delivered. Concur—Sullivan, J. P., Ross, Rosenberger and Wallach, JJ.