■ FISHKILL HEALTH RELATED CENTER, INC., et al., Appellants, v VAN DEWATER & VAN DEWATER et al., Respondents. [651 NYS2d 986] —In an action to recover damages for legal malpractice, the plaintiffs appeal (1) as limited by their brief, from so much of an order of the Supreme Court, Dutchess County (DiBlasi, J.), dated October 26, 1995, as granted the defendants' motion for summary judgment dismissing the complaint and denied as academic their motion to preclude and for discovery, and (2) from an order of the same court, dated March 4, 1996, which denied their motion, in effect, for reargument.

Ordered that the appeal from the order dated March 4, 1996, is dismissed, as no appeal lies from an order denying reargument; and it is further,

Ordered that the order dated October 26, 1995, is reversed insofar as appealed from, on the law, the defendants' motion for summary judgment is denied, the complaint is reinstated, and the matter is remitted to the Supreme Court, Dutchess County, for a determination of the plaintiffs' motion to preclude and for further discovery; and it is further,

Ordered that the plaintiffs are awarded one bill of costs.

By letter dated March 22, 1988, the plaintiffs received a 10-day notice to cure various defaults of a lease. The notice set forth three alleged violations of the lease: (1) that the plaintiffs had failed to provide insurance on the premises naming the landlord as an additional insured party, (2) that the plaintiffs had taken an assignment of the premises without posting the requisite security of five months' rent ($120,000), and (3) that the plaintiffs had impermissibly sublet a portion of the premises. On or about March 25, 1988, Kenneth Hubbard, the Treasurer and Chief Financial Officer of the corporate plaintiff, sought legal advice from the defendant John K. Gifford, Esq., a partner of the defendant law firm Van DeWater & Van DeWater. Ultimately, the plaintiffs were adjudged in breach of the lease for failure to post the security deposit (*see, Kallen v Kasin,* 200 AD2d 557). In the action at bar, the plaintiffs allege that the defendants' failure to have advised them as to the availability of, and/or to have secured, a *Yellowstone* injunction (*see, First Natl. Stores v Yellowstone Shopping Ctr.,* 21 NY2d 630) prior to the expiration of the 10-day cure period

constituted legal malpractice and was the proximate cause of the loss of their lease (*see, L.I.C. Commercial Corp. v Rosenthal,* 202 AD2d 644; *Raphael v Clune, White & Nelson,* 201 AD2d 549). After issue was joined, the defendants' motion for summary judgment was granted. We disagree.

In support of their motion for summary judgment, the defendants submitted, among other documents, an affidavit from Hubbard and an affidavit from Gifford, both of whom detailed their conversations prior to the expiration of the 10-day cure period. In essence, Hubbard averred that he told Gifford that the plaintiff corporation could not post the $120,000 security within the 10-day cure period or "in the foreseeable future". Gifford averred that, based on his conversations with Hubbard, whom he knew to be authorized to represent the plaintiff corporation, he concluded "that [the corporate plaintiff] could not cure the security deposit default within the ten day period required by lease". Based on this and the two other alleged defaults, which he also believed could not be cured, Gifford "gave no extended consideration to a strategy based upon curing the breaches within the ten day period provided in the lease". In opposition to the motion, the plaintiffs submitted the affidavit of the plaintiff Lynn Kasin, the administrator and President of the corporate plaintiff. Kasin asserted, *inter alia,* that the corporate plaintiff was able to post the $120,000 security, and that neither Hubbard nor Gifford had ever advised him that nothing could be done to prevent the termination of the lease. We disagree with the dissent that, on such a record, the issues presented may be resolved as a matter of law.

Absent from both the affidavit of Hubbard and the affidavit of Gifford is any express discussion of whether or not the issue of a *Yellowstone* injunction was raised or considered and, *inter alia,* what constituted "the foreseeable future". Indeed, Gifford's affirmation suggests that he incorrectly believed that the securing of a *Yellowstone* injunction would have been efficacious only if the plaintiffs could have cured the alleged defaults within the 10-day cure period (*see, Waldbaum, Inc. v Fifth Ave. of Long Is. Realty Assocs.,* 85 NY2d 600; *Post v 120 E. End Ave. Corp.,* 62 NY2d 19). At the time that the defendants' motion for summary judgment was made, neither Hubbard nor Gifford had yet been deposed. Thus, questions of fact remain, *inter alia,* as to whether a *Yellowstone* injunction could have been secured and, if it could had been secured, whether or not the alleged defaults under the lease could have been cured within whatever period would have been afforded thereby. Questions

of fact also exist as to whether the defendants raised and/or considered securing a *Yellowstone* injunction and, if they did not, whether such a failure was both a departure from the standard of skill that would have been exercised by an ordinary member of the legal community and a proximate cause of the plaintiffs' loss of their lease (*see generally, L.I.C. Commercial Corp. v Rosenthal,* 202 AD2d 644, *supra*). Accordingly, the defendants' motion for summary judgment should have been denied.

Because Gifford and Hubbard have exclusive knowledge about whether they discussed the possibility of securing a *Yellowstone* injunction, fairness entitles the plaintiffs to further discovery (*see,* CPLR 3212 [f]; *Terranova v Emil,* 20 NY2d 493, 497; *Kindzierski v Foster,* 217 AD2d 998; *Baldasano v Bank of N. Y.,* 199 AD2d 184; *Ellis v Allstate Ins. Co.,* 151 AD2d 543). Significantly, Hubbard's interest in the corporate plaintiff was purchased by Kasin in 1992 and there has been an apparent falling out between these parties. Thus, the plaintiffs' pending motion for discovery and preclusion is not academic.

Finally, the Supreme Court properly characterized the plaintiffs' motion to renew and reargue as a motion for reargument (*see,* CPLR 2221; *Jacondino v Lovis,* 186 AD2d 109; *Bell-Tronics Communications v Winkler,* 178 AD2d 455, 457). Ritter, J. P., Pizzuto and Luciano, JJ., concur.

Friedmann, J., concurs in part and dissents in part and votes to dismiss the appeal from the order dated March 4, 1996, and to affirm the order dated October 26, 1995, insofar as appealed from, with the following memorandum: I respectfully disagree with the majority's decision to reverse the order dated October 26, 1995, insofar as appealed from. I would affirm that order insofar as appealed from, essentially for the reasons stated by Justice DiBlasi at the Supreme Court.

The plaintiffs at bar were in default of the terms of their lease in that they had improperly sublet part of the premises, had failed to obtain insurance naming the landlord as an additional insured, and had taken assignment of the lease without posting the requisite security deposit of $120,000.

To address only the last of these defaults, under the terms of the 1971 lease, upon any assignment of the contract the assignee was to post five months rent, or $120,000, as security. When the original lessee, Robert Kasin, died in January 1977, the premises at issue here, which housed a health-related facility, passed to a trust, and thence to Kasin's three remaindermen, including Kenneth Hubbard. In or around January 1, 1982, the remaindermen created the plaintiff corporation, Fish-

kill Health Related Center, Inc. (hereinafter FHRC), to which they assigned the health facility's lease—neglecting, however, to post the required security, or even to obtain the landlord's consent to the assignment, in violation of the terms of the lease (*Kallen v Kasin,* 200 AD2d 557, 558).

In January 1983, Hubbard notified the landlord of the assignment. The landlord responded in a letter dated February 8, 1983, questioning the validity of the assignment in the absence of any record that a previous assignment had been made from the Estate of Robert Kasin to the remaindermen. Notwithstanding this, the landlord formally requested copies of the assignment documents, licensing certificates, and five months' rent as a security deposit. This last request was repeated more than four years later, in a letter dated June 30, 1987.

On March 23, 1988, the landlord served a Notice of Intention to Terminate Lease on FHRC. Under the terms of the parties' contract, FHRC had 10 days within which to cure the enumerated defaults, including its failure to post the security deposit. When no cure was forthcoming, the landlord commenced an action for a judgment declaring the rights of the parties with respect to the lease. The Supreme Court granted the landlord's motion for partial summary judgment, finding that FHRC had breached the lease by failing to post the security deposit. By decision and order dated January 10, 1994, this Court affirmed ruling without merit FHRC's argument that the assignment provisions in the lease did not apply because the leasehold estate had been transferred to FHRC "by operation of law" (*Kallen v Kasin, supra,* 200 AD2d, at 558).

In the instant action, in which FHRC seeks to blame the loss of its leasehold on its attorneys' failure to obtain a *Yellowstone* injunction, the defendants submitted an affidavit from Kenneth Hubbard, FHRC's former Treasurer, Chief Financial Officer, and shareholder, in which Hubbard averred that on March 25, 1988, two days after FHRC had received the landlord's Notice of Intention to Terminate Lease, Hubbard told the defendant law partner, John K. Gifford, Esq., that FHRC "did not have the funds to post the security deposit and did not have the ability to raise the money either then or in the foreseeable future". Attorney Gifford confirmed Hubbard's account in a separate affidavit. It cannot be disputed that Gifford had a right to rely upon the information supplied to him by FHRC's Chief Financial Officer regarding FHRC's inability to post the security deposit (*see, Federal Ins. Co. v Diamond Kamvakis & Co.,* 144 AD2d 42).

A commercial tenant is entitled to a *Yellowstone* injunction to preserve the status quo pending determination of its underlying dispute with its landlord only when it can demonstrate, *inter alia,* that it has *both* the desire *and* the ability to cure the alleged default by any means short of vacating the premises (*First Natl. Stores v Yellowstone Shopping Ctr.,* 21 NY2d 630; *Stuart v D & D Assocs.,* 160 AD2d 547). Here, the evidence establishes that FHRC told its attorneys that it could not raise the $120,000 at any time "in the foreseeable future", with the result that the defendants could not be guilty of malpractice in failing to propose a *Yellowstone* injunction to their clients. In the alternative, even assuming that the defendants *were* negligent in not discussing a *Yellowstone* injunction with the plaintiffs, such negligence did not "cause" the plaintiffs' loss (*see, L.I.C. Commercial Corp. v Rosenthal,* 202 AD2d 644). Rather, the plaintiffs' declared inability to post the security deposit within the contractual cure period was the supervening cause of their damages (*see, Kallen v Kasin, supra; Boyarsky v Froccaro,* 125 Misc 2d 352).

In addition to the foregoing, FHRC's position on the prior appeal—that it did not owe the landlord a security deposit because the leasehold estate had been transferred to it by operation of law—casts serious doubt on its *willingness* to cure the default (*see, e.g., Linmont Realty v Vitocarl, Inc.,* 147 AD2d 618; *Cemco Rests. v Ten Park Ave. Tenants Corp.,* 135 AD2d 461). Indeed, Gifford averred that FHRC's strategy throughout was to represent "its conduct as not constituting a default under the lease rather than attempting to effect a cure". Lest it be objected that this defense might merely have been contrived for FHRC by its malpracticing attorneys after they had failed to make proper application for a *Yellowstone* injunction, it should be noted that FHRC's position that it had no obligation to post a security deposit comports with the record evidence that FHRC *never* approached the landlord with a bona fide offer to pay this obligation, even when its finances would seemingly have permitted it. Indeed, the lease left the hands of the original lessee in 1977, and—at least according to the defendants' brief on this appeal—the plaintiffs have remained in possession of the premises to this day. Yet, the record on appeal discloses that not once in all these years did the plaintiffs so much as offer to negotiate the issue of the security deposit with their landlord.

FHRC therefore failed to carry its burden of establishing that it was entitled to the *Yellowstone* relief which it alleges the defendants should have procured for it; and it further failed

to demonstrate that such an injunction, could it have been obtained, would have averted the plaintiffs' damages. Accordingly, in my opinion, summary judgment was properly granted to the defendants.

Finally, FHRC's complete failure to show what efforts it made to depose or take a statement from Messrs. Hubbard and Gifford, despite the pendency of this action since May 1994, disqualifies the plaintiffs from invoking CPLR 3212 (f) and demanding such disclosure at this late date (see, *Douglas Manor Assn. v Alimaras*, 215 AD2d 522, 524; *Hanneford Circus v Cabar Circus Promotions*, 201 AD2d 456; *Stevens v Hilmy*, 185 AD2d 840). I note that it was only in a belated "Sur-Reply Brief" submitted in September 1995 that FHRC first claimed to need a deposition of Hubbard—who, far from being within the exclusive control of the defendants, was until 1992 an officer and, with his wife, a 50% shareholder of the plaintiff corporation. Moreover, aside from vague attacks on Hubbard's credibility and good faith, the plaintiffs have failed to specify what facts might be in his possession that could defeat the defendants' motion for summary judgment (see, e.g., *Downey v General Foods Corp.*, 31 NY2d 56; *Summer v Pressman Prod.*, 190 AD2d 611; *Home Sav. Bank v Arthurkill Assocs.*, 173 AD2d 776).