[814 NYS2d 104]

W. Edward Bailey et al, Appellants, v Fish & Neave et al.,
Respondents.

First Department, April 13, 2006

**APPEARANCES OF COUNSEL**

*Jeffrey A. Jannuzzo*, New York City, for appellants.

*Simpson Thacher & Bartlett LLP*, New York City (*Roy L. Reardon, William H. Efron* and *Craig S. Waldman* of counsel), for respondents.

**OPINION OF THE COURT**

Williams, J.

Plaintiffs were partners at defendant Fish & Neave, an intellectual property law firm. W. Edward Bailey was a partner for over 22 years and the managing partner from 1994 until mid-2000. Kevin J. Culligan worked at the firm for 24 years and was a partner for 15 years. Defendant Ropes & Gray LLP is the successor firm to Fish & Neave by way of a merger, effective January 1, 2005. Fish & Neave was governed by a partnership agreement that went into effect on January 1, 1970. Section 6 of the partnership agreement provided as follows:

"MAJORITY TO RULE

"In all questions relating to the partnership business (including dissolution of the partnership) the decision of a majority in interest of the partners . . . shall be conclusive upon and bind all the partners, except as otherwise provided herein."

In late December 2003, Fish & Neave, feeling the market pressures in its field of practice and experiencing an increase in the withdrawal of partners, began to reconsider its policy relative to withdrawing partners, an area addressed in sections 11 and 16.5 (a) of its partnership agreement. Essentially, the then-existing policy was based upon an accrual accounting system, i.e., partners did not receive their share of profits for completed work until the client paid the firm. Hence, a withdrawing partner was entitled to receive his share of accrued compensation, disbursements on behalf of clients, and contingency fees for work completed prior to his withdrawal, upon the firm's receipt of payment. A withdrawing partner's rights vested upon the date of his withdrawal, and the amounts due would be ascertained "as of the close of business on the date of the ex-

partner's withdrawal" and were to be paid as soon as possible. In addition, the withdrawing partner was to be repaid his capital interest in the firm "within a reasonable time, but not more than 14 months after" the date of withdrawal. The latter provision, contained in section 16.5 (a) of the partnership agreement, was amended in 1986 to provide that the withdrawing partner was entitled to capital repayment "not later than the conclusion of the then current taxable year of the partnership."

While considering the change in policy, the law firm passed, by majority vote, two "standstill" amendments to the partnership agreement. The first standstill amendment, passed on December 23, 2003 and expressly applicable to all active partners, provided in relevant part:

> "Notwithstanding [the applicable sections of the agreement] . . . [t]he rights of any partner who voluntarily leaves the partnership effective on or after December 15, 2003 and on or before March 31, 2004, to receive payments from the partnership after the effective date of such partner's leaving, shall be governed solely by the provisions of the Partnership Agreement, as in effect on January 1, 2005, or, if adopted on an earlier date, the provisions of any further amendment to the Partnership Agreement, adopted and made effective after the date hereof and prior to January 1, 2005, that explicitly addresses the rights of partners who voluntarily leave the partnership to receive payments from the partnership after their effective date of withdrawal."

By its terms, the first standstill amendment expired on March 31, 2004; however, as that date approached, the law firm had not completed its revision of the policy. Consequently, on March 15, 2004, it adopted a second standstill amendment, also by majority vote, that extended the time "to consider and approve permanent amendments to the Partnership Agreement" on the issue of withdrawal of partners. Now, the right to payments of a partner who withdrew between December 23, 2003 and May 31, 2004 was to be governed by the provisions of the partnership agreement as in effect on June 1, 2004. Also, the second standstill amendment expressly affirmed the validity of the first. Both plaintiffs were partners of the firm when each of the standstill amendments was passed; Culligan voted in favor of each of them.

On May 17, 2004, the law firm passed, by a majority vote of the partnership's shares, the amendment at issue, effective January 1, 2004. Essentially, the firm's accounting system was transformed from accrual-based to cash-based, which, in turn, changed the amount and timing of payments of partnership income to withdrawing partners. The "pipeline" that existed under the accrual-based system was eliminated and replaced by a "Special Distribution," which amount was specified in a "Schedule A" attached to the amendment and was to be paid to withdrawing partners over a five-year period upon the later of retirement or reaching the age of 65, or upon death if payment had not already commenced. The amendment also ratified a 1997 restructuring of the partnership capital and of the timing and amount of its repayment to withdrawing partners, set out in a "Schedule B" attached to the amendment.

Plaintiffs withdrew from the firm to assume positions at another law firm. Bailey gave notice of his intent to withdraw from the firm on April 16, 2004, requesting that the firm waive its 60-day notice requirement. On May 12, 2004, he sent a follow-up letter stating that his withdrawal was effective as of May 14, 2004. After some uncertainty about the terms of his departure, Bailey was finally released from the firm, effective May 28, 2004. Culligan gave his notice on May 12, 2004, also requesting waiver of the notice requirement. Culligan withdrew from the firm on June 25, 2004.

Plaintiffs commenced this action on November 10, 2004. On January 11, 2005, they filed an amended complaint alleging causes of action for breach of contract, breach of fiduciary duty, imposition of a constructive trust, and declaratory judgment, and seeking, inter alia, money damages in the amount of $2.4 million for their capital and unpaid accrual income. Defendants moved to dismiss the complaint, pursuant to CPLR 3211 (a) (1), (2) and (7), based on documentary evidence, lack of a justiciable controversy and failure to state a cause of action. Plaintiffs opposed and cross-moved to convert the motion to one for summary judgment on the issue of liability. The motion court granted the motion to dismiss with prejudice, finding the amendment valid pursuant to the partnership agreement, and denied the cross motion.

The pivotal issue on this appeal is whether or not the parties' partnership agreement, which provides that a majority partnership interest vote is conclusive on "all questions relating to the partnership business (including dissolution of the partnership),"

was properly amended by majority vote on the issue of the compensation of withdrawing partners. We agree with the motion court that the amendment was proper, since the amended section, the provision governing withdrawal of partners, does not qualify the majority rule provision, since the agreement clearly evinces the partners' intent to be governed by other than majority rule when they choose to do so, and since the amendment was voted in accordance with Partnership Law § 40, which states in relevant part:

> "The rights and duties of the partners in relation to the partnership shall be determined, *subject to any agreement between them*, by the following rules: . . .

> "8. Any difference arising as to ordinary matters connected with the partnership business may be decided by a majority of the partners; but no act in contravention of any agreement between the partners may be done rightfully without the consent of all the partners." (Emphasis added.)

It is a long-settled principle in New York law that partners are allowed to agree among themselves how their partnership will be governed, and that section 40 is a default provision only applicable absent such an agreement (*see Lanier v Bowdoin*, 282 NY 32, 38 [1939]; *Corr v Hoffman*, 256 NY 254, 272 [1931]; *Urban Archaeology Ltd. v Dencorp Invs., Inc.*, 12 AD3d 96, 102-103 [2004]; *Rodman v Reid & Priest*, 167 AD2d 310, 310-311 [1990], *lv dismissed* 77 NY2d 874 [1991]).

The parties' partnership agreement, as noted, supra, not only provides for majority rule, but makes it clear that majority rule extends even to the decision to dissolve the partnership, the most momentous business decision the partnership could take. Also noteworthy is the "except as otherwise provided herein" language, because the agreement does specify, in sections 9 ("SEVERANCE OF PARTNERS") and 16.7 (a) ("MISCELLANEOUS" with respect to changes in a retired partner's rights), that these decisions require, respectively, a two-thirds vote of the partnership and the consent of the retired partner. These provisions, taken in sum, demonstrate that, indeed, the partnership agreement reflects an intent to govern the rights of withdrawing partners by majority vote, not unanimously; more important decisions like dissolution and removal of a partner require only majority and two-thirds votes, respectively, and the agreement requires a partner's consent to a change in his or

her rights only when it involves a retired partner's compensation rights. Moreover, section 11 ("UPON WITHDRAWAL OF PARTNER") contains no qualification of the majority vote requirement, and plaintiffs conceded as much at oral argument in the motion court.

Additional evidence of the partnership's intent and understanding as to the majority rule provision is demonstrated by the procedure it followed just prior to adopting the amendment at issue. The record shows that the two "standstill" amendments, adopted by the partnership in contemplation of the changes incorporated in the permanent amendment, were both adopted by majority vote, and the second standstill amendment expressly affirmed the validity of the first.

Plaintiff Bailey's claim that he withdrew from the law firm prior to the effective date of the amendment, and therefore was not bound by its terms, is without merit. The record shows that the amendment was passed May 17, 2004, with an effective date of January 1, 2004, and that Bailey, as previously noted, was finally released from the firm, effective May 28, 2004. In any event, the standstill amendments, adopted in December 2003 and March 2004, provided that any partner who withdrew between December 23, 2003 and May 31, 2004 would be "governed solely by the provisions of the Partnership Agreement, as in effect on June 1, 2004." Bailey's contention that his "anti-standstill" agreement, entered into just prior to adoption of the second standstill agreement on March 15, 2004, excluded him from the second standstill agreement, is also without merit. The "anti-standstill" agreement simply provided that in exchange for Bailey not disrupting the March 15, 2004 meeting, the law firm agreed that "any action taken by the Firm at its meeting . . . will be without prejudice to the rights of [Bailey] to later challenge such action . . . ." Culligan, a signatory of both standstill amendments, left the firm on June 25, 2004, well after the permanent amendment was adopted.

Plaintiffs also contend that since the other 31 amendments adopted by the partnership in the past 34 years have been passed by unanimous consent, such unanimity is required in this instance as well. However, this does not negate the clear and unambiguous provisions of the partnership agreement, and hence, does not allow this Court to rewrite it (*Urban Archaeology Ltd.*, 12 AD3d at 103 [2004]). The cases plaintiffs cite to the contrary (*see e.g. City of New York v New York City Ry. Co.*, 193 NY 543, 548 [1908] [parties' prior construction examined only

where the agreement was "a contract of doubtful meaning"]; *Battista v Carlo*, 57 Misc 2d 495 [1968]) are distinguishable as involving situations where the language of the agreement was ambiguous, making relevant the parties' construction of the agreement.

Plaintiffs cited numerous other cases in opposition to the applicability of the partnership agreement's majority rule provision here, but they were also either inapposite or distinguishable. For example, *Curtin v Glazier* (94 AD2d 434 [1983]) and *Duell v Hancock* (83 AD2d 762 [1981]) are cited for the proposition that Partnership Law § 40 (8) prohibits amendments to the partnership agreement without unanimous consent. However, that provision was applicable in those cases because, unlike the agreement in this case, those partnership agreements lacked a provision providing for modification of a partner's rights by the partnership by less than unanimous consent. In *Borgeest v Wilson, Elser, Moskowitz, Edelman & Dicker* (283 AD2d 245, 246 [2001]), where the law firm attempted to terminate its partnership agreement and replace it with a new one, the original partnership agreement required that termination of the partnership could only be achieved by "the unanimous vote, confirmed in writing, of the Regular Members of the Executive Committee." However, the Court found that the executive committee never voted to terminate the agreement, hence the partnership had not been terminated, and the plaintiff could not be bound by a new agreement to which he had not agreed. Apparently, the original *Borgeest* partnership agreement had no provision allowing the firm to write a new agreement upon less than unanimous consent. This is distinguishable from the instant case, where the agreement specifies that all questions related to partnership business are to be decided by majority rule, unless otherwise provided. In *Evans v Winston & Strawn* (303 AD2d 331 [2003]), where the law firm adopted an amendment that changed the rights of withdrawing partners in the context of an imminent merger with another firm, to go into effect three weeks after it was passed, i.e., the day of the merger, and the plaintiffs withdrew from the firm during the three-week interim, the Court held that the plaintiffs' rights had to be determined by the original agreement, since the amendment had not yet gone into effect. *Evans* has no implication for the instant plaintiffs' proposition that withdrawing partners' rights cannot be changed without

unanimous consent. Moreover, in this case, plaintiffs did not withdraw until after the amendment went into effect.

Plaintiffs also cite *Stuart v Lane & Mittendorf* (235 AD2d 294 [1997], *lv denied* 89 NY2d 811 [1997]), *Wolfson v Rosenthal* (210 AD2d 47 [1994], *lv dismissed* 85 NY2d 924 [1995]), and *Abbott v Schnader, Harrison, Segal & Lewis, LLP* (2002 Pa Super 247, 805 A2d 547 [2002], *appeal denied* 573 Pa 708, 827 A2d 1200 [2003]) as analogous cases where courts barred a law firm's amendment of its agreement so as to treat departing or retired partners in a discriminatory manner. None of these cases has any applicability to the case at bar; each is readily distinguishable. *Stuart* tersely addressed a situation where a partnership attempted to deprive a former partner of compensation unfairly. *Wolfson* involved a law firm where the majority of partners joined a new law firm but refused to dissolve their former partnership, in an effort to punish a partner who did not join the new firm by not paying him his fair share of partnership capital. *Abbott* involved a partnership that attempted to amend its agreement to reduce compensation to retired partners, and had no apparent applicability to withdrawing partners in plaintiffs' circumstances. In the instant case, as the motion court specifically found, the record contradicts any discriminatory treatment of plaintiffs, and shows that the amendment was applied uniformly to all partners. Furthermore, while the instant case does not involve plaintiffs' retirement rights, the partnership agreement expressly provides, at section 16.7 (a), that such rights cannot be changed without plaintiffs' consent.

Finally, we find that the motion court did not err in denying plaintiffs' motion, pursuant to CPLR 3211 (c), to convert defendants' dismissal motion to one for summary judgment. The court correctly concluded that this case could be decided on the merits upon the documentary evidence submitted on the motion to dismiss.

Accordingly, the judgment of the Supreme Court, New York County (Bernard J. Fried, J.), entered May 18, 2005, which dismissed the amended complaint, should be affirmed, with costs. The appeal from the order, same court and Justice, entered May 12, 2005, which granted defendants' pre-answer motion pursuant to CPLR 3211 (a) (1), (2) and (7) to dismiss the amended complaint, and denied plaintiffs' cross motion to convert the motion into one for summary judgment and to grant

summary judgment in their favor on the issue of liability, should be dismissed, without costs, as subsumed within the appeal from the judgment.

MAZZARELLI, J.P., FRIEDMAN, GONZALEZ and SWEENY, JJ., concur.

Judgment, Supreme Court, New York County, entered May 18, 2005, affirmed, with costs. Appeal from order, same court, entered May 12, 2005, dismissed, without costs, as subsumed within the appeal from the judgment.