[868 NE2d 956, 837 NYS2d 600]

W. Edward Bailey et al., Appellants, v Fish & Neave et al., Respondents.

Argued March 28, 2007; decided May 8, 2007

## POINTS OF COUNSEL

*Jeffrey A. Jannuzzo,* New York City, for appellants. I. The words "the partnership business" do not convey the power to

amend the partnership agreement itself. (*Cohen v Lord, Day & Lord,* 75 NY2d 95; *Denburg v Parker Chapin Flattau & Klimpl,* 82 NY2d 375; *Hackett v Milbank, Tweed, Hadley & McCloy,* 86 NY2d 146; *Dawson v White & Case,* 88 NY2d 666.) II. Even if it can be amended, a partnership agreement cannot be retroactively "amended" to confiscate vested earnings. (*Bier Pension Plan Trust v Estate of Schneierson,* 74 NY2d 312; *Becker v Faber,* 280 NY 146; *Polyfusion Elec., Inc. v AirSep Corp.,* 30 AD3d 984; *Todd v Weber,* 95 NY 181; *Flemington Natl. Bank & Trust Co. [N.A.] v Domler Leasing Corp.,* 65 AD2d 29, 48 NY2d 678; *Gelder Med. Group v Webber,* 41 NY2d 680; *Ely-Cruikshank Co. v Bank of Montreal,* 81 NY2d 399; *Sibbald v Bethlehem Iron Co.,* 83 NY 378; *Ashland Mgt. v Janien,* 82 NY2d 395; *Wakefield v Northern Telecom, Inc.,* 769 F2d 109.)

*Simpson Thacher & Bartlett LLP,* New York City (*Roy L. Reardon* of counsel), for respondents. I. The amended complaint was properly dismissed on the ground that documentary evidence established as a matter of law that the partnership agreed to be governed by majority rule on all questions related to the partnership. (*Riviera Congress Assoc. v Yassky,* 18 NY2d 540; *Lanier v Bowdoin,* 282 NY 32; *Corr v Hoffman,* 256 NY 254; *Polner v Monchik Realty Co.,* 9 Misc 3d 755; *Chalmers v Weed,* 175 Misc 740.) II. The amended complaint was properly dismissed on the ground that documentary evidence established as a matter of law that the amendment is valid. (*Jackson v Hunt, Hill & Betts,* 7 NY2d 180; *Rotenberg v Chamberlain, D'Amanda, Oppenheimer & Greenfield,* 248 AD2d 1021; *St. James Plaza v Notey,* 111 AD2d 228; *Gelder Med. Group v Webber,* 41 NY2d 680; *Stuart v Lane & Mittendorf,* 235 AD2d 294; *Wolfson v Rosenthal,* 210 AD2d 47; *Smith v Brown & Jones,* 167 Misc 2d 12; *Cohen v Lord, Day & Lord,* 75 NY2d 95; *Denburg v Parker Chapin Flattau & Klimpl,* 82 NY2d 375; *Reiner v Townley & Updike,* 243 AD2d 338.)

### OPINION OF THE COURT

JONES, J.

At issue is the propriety of an amendment to a partnership agreement affecting compensation to withdrawing partners and passed by a majority of the shares in interest of the partnership. Because the agreement, by its terms, unambiguously permits amendments thereto by majority vote, we conclude that the agreement was properly amended, and affirm the Appellate Division order so holding.

Plaintiffs were former equity partners at defendant Fish & Neave, an intellectual property law firm.[1] The firm was governed by a partnership agreement entered into on January 1, 1970 (Agreement). Although the Agreement contains no specific amendment provision, section 6 provides that "[i]n all questions relating to the partnership business (including dissolution of the partnership) the decision of a majority in interest of the partners . . . shall be conclusive upon and bind all the partners, except as otherwise provided herein." Sections 9 and 16.7 (a) are the only provisions that specifically qualify the "majority vote" requirement on certain questions relating to the partnership business. Under section 9, "a partner . . . may be severed from [the] partnership by a vote of at least two-thirds of all the then number of partners." Section 16.7 (a) provides that certain payment rights of an elder or retired partner cannot be changed without the written consent of such partner or of his or her estate if such partner is deceased. On the other hand, section 11 of the Agreement, which provides for the amount and timing of payments to withdrawing partners, contains no language qualifying the Agreement's "majority vote" provision.

In December 2003, the firm decided to change its accrual-based accounting system to a cash-based system, a decision that would affect the way withdrawing partners were compensated under section 11 of the Agreement.[2] The firm based this decision, in large part, on an increase in the number of withdrawing partners and its inability—due to its use of the accrual-based system—to attract lateral partners or merger opportunities with firms that employ the more common cash-based system. Further, the firm was advised that maintaining its current system could significantly detract from its health and success

---

1. Fish & Neave LLP, which came into existence on or about September 30, 2004, was the successor to Fish & Neave. Both firms merged into Ropes & Gray LLP on or about January 1, 2005. Fish & Neave, Fish & Neave LLP and Ropes & Gray LLP are all named defendants.

2. Under the firm's then-existing accounting system, fees for professional time were recorded as revenue when received from clients, not when earned; as such, a partner was not entitled to a share of profits for completed work until the client paid. Under section 11 of the Agreement, a withdrawing partner was entitled to "pipeline" payments, i.e., his or her share of (1) compensation received by the firm after withdrawal for work done prior to withdrawal, (2) the partnership profits and (3) contingent fee income for work completed prior to withdrawal. In addition, section 16.5 (a) of the Agreement provided that a withdrawing partner was entitled to repayment of capital interest in the firm by the end of the current tax year.

over time and possibly jeopardize its ongoing viability. In contemplation of a permanent amendment to the Agreement affecting compensation to withdrawing partners, the firm adopted two interim "standstill" amendments to the Agreement, which were binding on all active partners. The first passed by a majority of the shares in interest of the partnership on December 23, 2003 and added a new section 11 (C), which expressly amended the Agreement provision regarding withdrawing partners. The first "standstill" amendment provided that

> "[t]he rights of any partner who voluntarily leaves the partnership effective on or after December 15, 2003 and on or before March 31, 2004, to receive payments from the partnership after the effective date of such partner's leaving, shall be governed solely by the [permanent amendment ultimately enacted after December 23, 2003 and by January 1, 2005]."

This amendment expired on March 31, 2004. The second "standstill" amendment, which passed by a majority vote on March 15, 2004, provided the partners additional time to consider and approve the above-mentioned permanent amendment. It also reiterated most of the key points of the first amendment, but provided that the rights of partners who withdraw on or after December 23, 2003 and on or before May 31, 2004 would be governed by the permanent amendment ultimately enacted after March 15, 2004 and by June 1, 2004 (the same day this interim amendment expired). Plaintiffs were active partners when both "standstill" amendments were adopted. Plaintiff Culligan voted in favor of both amendments, while plaintiff Bailey voted against them.

On April 16, 2004, Bailey gave written notice of his intent to withdraw from the firm and asked for a waiver of the firm's 60-day notice requirement for withdrawing partners. By letter dated May 12, 2004, Bailey advised the firm that he would withdraw by the close of business on May 14, 2004; however, as he never accepted the terms offered by the firm as a precondition to the requested waiver, the firm set the effective date of his withdrawal at May 28, 2004. Enclosed with Bailey's withdrawal letter was a proxy stating that he would vote against any amendment to the Agreement if the firm still deemed him to be a partner. On the same date of Bailey's withdrawal letter, Culligan also gave written notice of his intent to withdraw. Enclosed with his notice of withdrawal was a proxy stating that he

would vote against any amendment to the Agreement if the firm still deemed him to be a partner. Culligan withdrew on June 25, 2004.

On May 17, 2004, while plaintiffs were still active partners, the permanent amendment at issue passed by majority vote, retroactive to January 1, 2004. Under the permanent amendment, the firm eliminated its accrual-based accounting system and converted to a cash-based system. This change affected the amount and timing of payments to withdrawing partners in a number of ways. First, the "pipeline" payments that existed under the accrual-based system were replaced by "Special Distributions" that were to be paid to withdrawing partners over a five-year period upon the later of retirement or reaching the age of 65. Further, the amendment altered the timing and amount of the return of a withdrawing partner's capital. All active partners were bound by and all future withdrawing partners were treated the same under the amended Agreement.

Plaintiffs thereafter commenced this action sounding in, among other things, breach of contract. Specifically, plaintiffs alleged that (1) defendants refused to honor their rights under the Agreement to return of their capital and payment of their shares of accrued partnership income and contingent fee income, and (2) the permanent amendment should be declared invalid. Moreover, plaintiffs asserted that in passing the permanent amendment by a majority, rather than a unanimous vote, defendants violated New York Partnership Law § 40 (8), which provides:

> "The rights and duties of the partners in relation to the partnership shall be determined, *subject to any agreement between them*, by the following rules: . . .

> "Any difference arising as to ordinary matters connected with the partnership business may be decided by a majority of the partners; but no act in contravention of any agreement between the partners may be done rightfully without the consent of all the partners" (emphasis added).

Defendants filed a pre-answer motion to dismiss the amended complaint and plaintiffs cross-moved to convert the motion to dismiss to a motion for summary judgment (1) on the issue of liability and (2) seeking a declaration that the permanent amendment is invalid.

Supreme Court dismissed the amended complaint, ruling that the Agreement, by its terms, "permit[ted] an amendment,

regarding the amount and timing of payments to a withdrawing partner, such as the one at issue here, . . . by a majority vote" and held that the Agreement was "appropriately amended" (7 Misc 3d 1023[A], 2005 NY Slip Op 50713[U], *6). In so holding, the court rejected plaintiffs' argument that under Partnership Law § 40 (8), the permanent amendment could only be passed by unanimous consent of the partners. The Appellate Division affirmed (30 AD3d 48 [2006]); we granted leave to appeal and now affirm.

"Whether a contract is ambiguous is a question of law and extrinsic evidence may not be considered unless the document itself is ambiguous" (*South Rd. Assoc., LLC v International Bus. Machs. Corp.*, 4 NY3d 272, 278 [2005], citing *Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]). However, "when parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms" (*Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470, 475 [2004], quoting *W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990]; *see Springsteen v Samson*, 32 NY 703, 706 [1865] ["where the language is clear, unequivocal and unambiguous, the contract is to be interpreted by its own language"]). Such agreements should be read as a whole to ensure that undue emphasis is not placed upon particular words and phrases (*see South Rd. Assoc.*, 4 NY3d at 277, citing *Matter of Westmoreland Coal Co. v Entech, Inc.*, 100 NY2d 352, 358 [2003]). Moreover, courts "may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing" (*Vermont Teddy Bear*, 1 NY3d at 475, quoting *Reiss v Financial Performance Corp.*, 97 NY2d 195, 199 [2001]).

These principles are applicable to partnership agreements. It is well settled that partners may fix their partnership rights and duties by agreement (*see Lanier v Bowdoin*, 282 NY 32 [1939]; *Corr v Hoffman*, 256 NY 254 [1931]). On this point, we previously held that

> "[i]n the absence of prohibitory provisions of the statutes or of rules of the common law relating to partnerships, or considerations of public policy, the partners of either a general or limited partnership, as between themselves, may include in the partnership articles any agreement they wish concerning the sharing of profits and losses, priorities of distri-

bution on winding up of the partnership affairs and other matters. If complete, as between the partners, the agreement so made controls" (*Lanier*, 282 NY at 38).

In the present case, the Agreement, read as a whole, makes clear that (1) *all* questions related to the partnership, including its dissolution, may be decided by a majority vote, unless the Agreement provides otherwise, and (2) the partnership agreed to be bound by the "decision of a majority" on *all* partnership questions (*see* Agreement § 6). Accordingly, Partnership Law § 40 (8), which contains default provisions to be used "in the absence of an agreement between the partners on the same subject matter" (*Lanier*, 282 NY at 38), is inapplicable. As this Court stated, "[p]rovisions of [Partnership Law § 40] cannot be implied as part of the agreement so as to make a different contract from that which the parties intended nor override the agreement which the parties, in fact, made" (*id.* at 40, citing *Levy v Leavitt*, 257 NY 461, 470 [1931]).

In support of this interpretation, we note that it would be anomalous for the firm to be able to bring about the most fundamental change—dissolution—by majority vote and not be able to amend its compensation/payment system without the unanimous consent of the partners. We further note that sections 9 and 16.7 (a) of the Agreement contain language qualifying the "majority vote" provision, while section 11, the amended provision at issue here, does not. Plainly, where the firm intended for more than a majority vote to govern regarding a particular question related to the partnership, it so specified in the Agreement. Based on the foregoing, we conclude that under the Agreement, a majority vote suffices to pass proposed amendments involving such questions.

Plaintiffs' remaining contentions lack merit.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ and PIGOTT concur; Judge SMITH taking no part.

Order affirmed, with costs.