[845 NYS2d 30]

Dunnie Lai et al., Appellants, v H.J. Gartlan, Jr., Also Known as Jay Gartlan and Harry Gartlan, et al., Respondents, et al., Defendants.

First Department, November 1, 2007

### APPEARANCES OF COUNSEL

*Kirkpatrick & Lockhart Preston Gates Ellis, LLP*, New York City (*Michael R. Gordon* of counsel), and *Drabkin & Margulies*, New York City (*Ralph Drabkin* of counsel), for appellants.

*H.J. Gartlan, Jr., Gartlan & Associates*, Glen Ridge, New Jersey, respondent pro se.

*Raymond W.M. Chin*, New York City (*Donald Diamond* of counsel), for Double Fortune Property Investors Corp., respondent.

### OPINION OF THE COURT

GONZALEZ, J.

At issue in the present case is whether certain limited partners are entitled to an accounting with respect to a dissolved partnership, and whether the net profits obtained from a postdissolution sale of a partnership asset should, under the partnership agreement, be distributed equally among the partners or according to each partner's respective share. As we hold that plaintiff limited partners are entitled to summary judgment on their claim for an accounting, and that the postdissolution profits must be distributed according to each partner's respective partnership interest, we reverse and remand for further proceedings.

The dispute is between the general partner and two limited partners of a New York limited partnership known as 150 Lafayette Street Property Investment Co. The partnership was formed in 1981, by written partnership agreement, for the purpose of owning and investing in real property, including a building located at 150 Lafayette Street in lower Manhattan. Initially, the partnership was comprised of one general partner, defendant Double Fortune Property Investors Corp. (Double Fortune), which is owned and controlled by defendant H.J. Gartlan, Jr., and eight limited partners, including defendant Ricky Leung. Subsequently, plaintiffs Dunnie Lai and Generation Properties Investment Co. (GPIC) joined the partnership as

limited partners and several of the original limited partners retired. According to the most recent limited partnership certificate included in the record on appeal, the interest of each of the limited partners is: Henrietta Leung (44%), GPIC (39%) and Dunnie Lai (15%). Defendants have acknowledged in their interrogatory responses and depositions that the ownership interest of the general partner, Double Fortune, is approximately 1.8%.

The instant dispute arose in June 2002, after Gartlan, acting in his capacity as principal of Double Fortune, terminated Lai from her position as leasing and managing agent for the building. In July 2002, plaintiffs commenced the instant derivative action against defendants Gartlan, Double Fortune, Ricky and Henrietta Leung, and David Wankoff, an attorney who had previously represented the partnership. Plaintiffs' complaint, which was amended in August 2002 and January 2003, generally alleges that the defendants secretly conspired to deprive the plaintiffs of their equity interest in the building by destroying the partnership and acquiring the building for themselves. Plaintiffs alleged nine causes of action, including, inter alia, breach of fiduciary duty, breach of contract, fraud, legal malpractice, and for declaratory and injunctive relief. In addition, plaintiffs' ninth cause of action for an accounting specifically requested that the court "determine the respective rights, title and interests of the Limited Partners in the 150 Partnership, Dunnie Lai, Henrietta Leung, and GPIC, all of whom are parties to this action."

In December 2002, Lai and GPIC commenced a second action solely against defendant Henrietta Leung (Leung action), which also sought a declaration of the rights and respective ownership interests of the limited partners. This action was ultimately settled in a March 2006 settlement agreement (March 2006 settlement). Also, in December 2002, a mortgage foreclosure action was commenced by the Bank of East Asia against the partnership based on its failure to meet its obligations on the mortgage note for the building. A judgment of foreclosure was initially granted, but ultimately vacated prior to a private sale of the building in 2005.

On September 10, 2003, Lai submitted a letter to her partners announcing her retirement from the partnership. Under article V, paragraph 2 of the partnership agreement, "[t]he retirement, death or insanity of any Partner shall cause the immediate dissolution of the partnership." Subsequently, during the course of

the mortgage foreclosure action, Lai moved to confirm the dissolution of the partnership, and that motion was granted.

On June 9, 2005, the building was sold for $33.5 million. A portion of the sale proceeds was paid to creditors, including the Bank of East Asia, and the balance placed in an escrow account that was maintained by the partnership's then attorney, Lawrence Fabian, Esq., and that also required the signatures of the attorneys for Lai and Leung. At the time of the instant motion practice, the balance in the escrow account exceeded $23 million. Due to the aforementioned disputes between the partners, the winding up process, final accounting and distribution of partnership assets have yet to be completed.

Meanwhile, under the terms of the March 2006 settlement, the limited partners had agreed that their respective interests in the partnership were: Lai (15%), GPIC (55%) and Henrietta Leung ($6.5 million or her 28% interest, whichever was greater). Although the settling parties further agreed that Double Fortune's interest in the partnership was 1.8%, neither Double Fortune nor Gartlan were parties to that settlement. Subsequently, plaintiffs defaulted on the payments required by the settlement agreement and Leung's motion to enforce it was granted. This Court affirmed that order in November 2006 (34 AD3d 242 [2006]).

In subsequent court discussions regarding implementation of the March 2006 settlement, Gartlan or his representatives indicated their belief that the remaining proceeds of the sale of the building should be distributed *equally* among the general and limited partners according to a specific provision of the agreement, and not according to each partner's respective ownership interest. Plaintiffs objected, indicating that they would file a motion to have the court determine the proper method of distribution under the agreement.

Accordingly, in June 2006, plaintiffs Lai and GPIC filed the instant motion for partial summary judgment on their ninth cause of action for an accounting, specifically requesting "an [o]rder declaring that each partner's partnership interest determines that partner's distributive share of the escrowed proceeds from the sale of the Building." Plaintiffs relied in part on the March 2006 settlement, arguing that the distribution of the proceeds from the sale of the building should be governed by the respective partnership interests agreed to in that settlement. Plaintiffs also introduced an expert affidavit from an attorney who specialized in real estate partnership taxation, who

confirmed plaintiffs' position that, under the partnership agreement, the proceeds of the building sale were net profits that should be distributed to each partner's cash capital account according to their respective interests, and not equally as defendants contend.

Gartlan and Double Fortune raised several arguments in opposition. First, they noted that because they were neither parties to the Leung action nor signatories to the March 2006 settlement, the settlement agreement regarding partnership interests was not binding on them. Second, they argued that under article V, paragraph (3) (a) of the agreement, only cash or certain sale proceeds in each partner's cash capital account *as of the date of dissolution* would be distributed according to each partner's respective partnership interest, and since the building was sold two years after dissolution, such proceeds should not be credited to each partner's account and distributed under that method. Instead, they argued, under article V, paragraph 3 (g) of the agreement the proceeds should be distributed equally among all partners.

Third, defendants argued that plaintiffs' summary judgment motion was procedurally flawed. Defendants noted that while plaintiffs' motion for an accounting was directed at the escrowed proceeds of the 2005 building sale, there were no facts in the complaint reflecting such proceeds, nor could there be, since the second amended complaint was filed two years before the building was sold. In addition, defendants argued that plaintiffs' request for an accounting was not supported by actual allegations of wrongdoing, and that what plaintiffs really were requesting was a declaratory judgment, notwithstanding the failure to plead for such a judgment in the complaint.

In a "so-ordered" transcript, the motion court denied plaintiffs' motion for summary judgment on the claim for an accounting. During the lengthy colloquy, the parties and the court spent little time discussing whether plaintiffs had demonstrated entitlement to an accounting, but rather focused on the proper method of distribution of the sale proceeds under the agreement. On that point, the court agreed with defendants that the proceeds must be distributed equally, instead of according to each partner's partnership interest, because the sale proceeds were not in the partners' cash capital accounts as of the date of dissolution.

The court explained:

"Cash capital accounts can't change after dissolu-

> tion. The partnership ceases after the dissolution. You can't have a change in the cash capital account. As of the point of dissolution everything is frozen. It is as if you stopped the movie and freeze the frame. That's it, it stops as of dissolution. Partnerships don't continue[ ] after dissolution. You have a winding up, it's a simple ministerial act, you sell off assets and you look at the agreement to see what happens. I agree . . . in most partnerships these assets would have been distributed in proportion to the partnership interest. In this particular partnership agreement . . . that only happens with regard to the cash capital account."

On appeal, plaintiffs argue that the motion court erroneously interpreted the partnership agreement to require equal distribution of the proceeds of the building sale. They contend that, contrary to the court's finding, a dissolved partnership does not terminate upon dissolution, and thus, the sale of the building during the winding up process should have resulted in the net proceeds being credited to each partner's cash capital account according to their respective partnership interests, as the agreement generally required for all net profits. Plaintiffs further note that the motion court's interpretation penalizes the limited partners since Double Fortune's share of these net profits would be increased from its 1.8% share to 25%. We reverse.

At the outset, we note that plaintiffs' motion suffers from procedural irregularities, the most significant being a change in theory regarding their entitlement to an accounting. In the second amended complaint, plaintiffs' ninth cause of action sought an accounting and, more specifically, a determination of the "rights, title and interests" of the limited partners. Presumably, the factual basis for an accounting is the wrongdoing alleged in the complaint, namely, defendants' exclusion of plaintiffs from managing the partnership and the conspiracy to deprive them of their ownership interest in the building.

Now, in contrast, plaintiffs' instant motion seeks altogether different relief from that sought in the complaint. While the motion facially requests an accounting, it substantively seeks "an [o]rder declaring that each partner's partnership interest determines that partner's distributive share of the escrowed proceeds from the sale of the Building." Thus, plaintiffs' present motion no longer appears to be directed at an equitable accounting of partnership interests, but rather seeks a legal inter-

pretation of the partnership agreement to determine the proper method of distributing the building sale proceeds. As defendants point out, however, there are no facts in the complaint relating to the dissolution of the partnership or the sale of the building. In our view, plaintiffs have charted a highly unusual course by seeking summary judgment on a cause of action for an accounting that rests on facts that are largely outside of the pleadings.

Notwithstanding these irregularities, the legal question before us is whether plaintiffs have established their entitlement to an accounting as a matter of law. Under Partnership Law § 44, any partner has the right to a formal account of partnership affairs if the right exists under the terms of the partnership agreement. In this case, the partnership agreement provides that the retirement of any partner would result in immediate dissolution of the partnership, and that upon that dissolution, "[a] proper accounting shall be made." Both parties agree that the partnership was immediately dissolved upon Lai's retirement in September 2003, and we note that a prior order of the motion court confirmed this dissolution.

Although it is true that the dissolution of the partnership is not mentioned in the second amended complaint, this fact is included in plaintiffs' counsel's motion papers in support of the instant motion. Thus, even if plaintiffs erred in failing to amend their complaint to include factual allegations regarding the dissolution and sale of the building, the record stands undisputed that both events occurred and that upon dissolution, a formal accounting is required by the agreement (see Rubenstein v Rosenthal, 140 AD2d 156, 158 [1988] [summary judgment may be awarded on unpleaded cause of action if the proof supports such cause and opposing party has not been misled to its prejudice]). Nor do we discern any prejudice to either party in considering these additional events, since both parties and the court addressed the partnership's dissolution and the nature of the relief sought. Accordingly, because a factual basis exists in the record demonstrating plaintiffs' entitlement to an accounting as a matter of law, the motion for partial summary judgment on the ninth cause of action is granted to the extent that an accounting is ordered.

We also reverse and vacate the motion court's declaration that, under the terms of the partnership agreement, the proceeds of the building sale should be distributed equally among the partners. The key provision of the agreement relating to dissolution is article V, paragraph 3, which states in pertinent part:

"3. Upon the dissolution of the partnership for any reason, its liabilities and obligations to creditors shall be paid. A proper accounting shall be made of net profit or loss of the partnership *from the last previous accounting to the date of dissolution* and the net profit or loss shall be divided or borne as provided in Article IV [i.e., according to respective partnership interests]. A proper accounting shall be made of the Cash Capital and Securities Accounts of each Partner, and the assets of the partnership shall be distributed in the following order:

"(a) Cash, *or proceeds of sale of assets* . . . shall be distributed to the Limited Partners to the extent of his Cash Capital Account. . . .

"(d) *Cash and proceeds of the sale of assets* . . . shall be distributed to the General Partner to the extent of its Cash Capital Account. . . .

"(g) Any remaining partnership property or the proceeds of the sale thereof shall be distributed *equally* among all Partners, Limited or General" (emphasis added).

As may be seen from the above, article V, paragraph 3 accomplishes three separate tasks. First, upon dissolution it requires that all liabilities and obligations to creditors be paid. Second, it mandates an accounting of the net profit or loss of the partnership from the period between the last accounting and dissolution (first accounting), and that such net profit or loss be divided or borne according to article IV (according to partnership interest). Third, it requires an accounting of the cash capital and securities accounts of each partner (second or final accounting), and distribution of partnership assets in the specified order, commencing with cash and "proceeds of sale of assets" to the extent of each partner's cash capital account.

It is a well settled principle of New York partnership law that, absent any statutory, common-law or public policy prohibition, the partners of a limited or general partnership may enter into binding agreements of any type governing the sharing of profits and losses, priorities of distribution after dissolution and other matters (*Bailey v Fish & Neave*, 8 NY3d 523, 528-529 [2007]; *Lanier v Bowdoin*, 282 NY 32, 38 [1939]; *Urban Archaeology Ltd. v Dencorp Invs., Inc.*, 12 AD3d 96, 102 [2004]).

In this case, article V, paragraph 3 was an attempt by the partners to establish a binding agreement on the method and

priority of distribution of partnership assets after dissolution. Although both sides argue that the agreement is unambiguous, they offer conflicting interpretations. It is defendants' and the motion court's position that because the first accounting requires a determination of net profit and loss as of the date of dissolution, the cash capital accounts of each partner, into which net profits or loss are generally allocated (article IV, paragraph 2), are essentially frozen upon dissolution and cannot be adjusted by any postdissolution transactions. In contrast, plaintiffs argue that even though the agreement does require an immediate accounting of net profit or loss that is tied to the date of dissolution, it does not expressly mandate that the cash capital accounts cannot be adjusted thereafter to account for transactions yielding profit or loss during the winding up process.

In our view, plaintiffs offer the more persuasive interpretation. Initially, the motion court clearly overstated the effect of dissolution upon a partnership by stating that "[t]he partnership ceases after the dissolution." In fact, the law is clear that a partnership is not terminated upon dissolution, but rather continues for the purpose of winding up until such affairs are completed (Partnership Law § 61; *see also Scholastic, Inc. v Harris*, 259 F3d 73, 84-85 [2d Cir 2001]). Even the motion court conceded that the winding up process might entail the selling of assets of the partnership, which, in turn, might lead to the postdissolution accumulation of net profit or loss.

The court's misapprehension of the effect of dissolution may have influenced its related conclusion regarding the cash capital accounts. While the motion court announced that "[c]ash capital accounts can't change after dissolution . . . [a]s of the point of dissolution everything is frozen," it offered no legal authority or textual support for these statements. Indeed, nowhere in the partnership agreement does it explicitly say that the cash capital accounts may not be adjusted postdissolution. Nor is that conclusion reasonably inferred, since it is common during the winding up process for partnership assets to be sold, resulting in additional net profit or loss to the partnership.

The motion court apparently concluded that because the agreement ties the first accounting of net profit or loss to the date of dissolution, it must follow that the cash capital accounts are frozen as of that date. We think such an interpretation is strained. The allocation of net profit or loss to the cash capital accounts according to partnership interests is a critical

methodology in the partnership agreement (article IV, paragraph 2), and if that methodology was to be altered so dramatically in the postdissolution phase, a much clearer expression of that change would be expected. Here, there is certainly no clear indication in the agreement that net profit or loss would no longer be allocated according to partnership interests in the post-dissolution context.

The language used in article V, paragraph 3 further supports plaintiffs' position that net profit or loss from a postdissolution sale of partnership assets must be allocated to each partner's cash capital account in accordance with their respective interests. As indicated, paragraph 3 requires a second accounting of the cash capital and securities accounts of each partner, and the first class of assets to be distributed according to subdivision (a) is "[c]ash, *or proceeds of sale of assets* . . . shall be distributed to the Limited Partners to the extent of his Cash Capital Account" (emphasis added). The use of the phrase "proceeds of sale of assets" is significant, because it makes clear that this method of distribution will apply to assets that are *unsold* on the date of dissolution.

Moreover, if paragraph 3 (a) applied only to predissolution sales of assets, there would be no need to include the "proceeds of sale of assets" language into it. Under a separate provision of the agreement (article IV, paragraph 2), any net profit or loss from a predissolution sale would automatically be allocated to each partner's cash capital accounts, essentially converting such profits into cash. It would be pointless to mention "proceeds," or to distinguish such proceeds from cash, because everything in the cash capital accounts would be the equivalent of cash. The phrase "proceeds of sale of assets," therefore, can only refer to funds received from postdissolution sales. In turn, it follows that cash capital accounts are not frozen on the date of dissolution, but rather may be adjusted to reflect postdissolution profits received during the winding up period. Accordingly, we vacate the motion court's declaration, and declare that after the final accounting required by the agreement, the escrowed proceeds of the postdissolution building sale must be distributed according to each partner's partnership interest pursuant to article V, paragraph 3 (a) of the parties' agreement.

Finally, defendants' contrary reading of the agreement makes no economic sense. If cash capital accounts are fixed irrevocably on the date of dissolution, a partner with a very small ownership interest relative to the other partners would have the abil-

ity to substantially increase his proportionate share of distribution by the simple expedient of resigning at a time when valuable partnership assets remained unsold, thereby obtaining a windfall. We cannot embrace such a construction of the agreement (*Metropolitan Life Ins. Co. v Noble Lowndes Intl.*, 84 NY2d 430, 438 [1994] [" 'A court will endeavor to give the (contract) construction most equitable to both parties instead of the construction which will give one of them an unfair and unreasonable advantage over the other' "], quoting *Fleischman v Furgueson*, 223 NY 235, 241 [1918]).

Accordingly, the order of the Supreme Court, New York County (Charles E. Ramos, J.), entered December 1, 2006, which denied plaintiffs' motion for partial summary judgment on their ninth cause of action for an accounting and declared that the proceeds of the sale of the partnership's primary asset must be distributed equally among all partners under the partnership agreement, should be reversed, on the law, without costs, the motion granted and the declaration vacated, and it is declared that such sale proceeds must be distributed according to each partner's respective partnership interest.

MARLOW, J.P., WILLIAMS, CATTERSON and McGUIRE, JJ., concur.

Order, Supreme Court, New York County, entered December 1, 2006, reversed, on the law, without costs, plaintiffs' motion for partial summary judgment on their ninth cause of action for an accounting granted, the declaration vacated, and it is declared that such sale proceeds must be distributed according to each partner's respective partnership interest.