Salinger, Kenneth W., J.
Market Strategies, Inc. (“MSI”) claims that Cogent Research Holdings, LLC (which the parties refer to as “Holdco”) is liable for breaching a covenant not to sue not because Holdco itself filed a lawsuit, but instead because the three members of Holdco sued MSI in their individual capacities. The two lawsuits have been consolidated. The Court will ALLOW Holdco’s motion to dismiss the one claim against it because MSI has not alleged facts plausibly suggesting that Holdco can be held liable for breach of contract.
1. Factual Background
These consolidated actions arise from the May 2013 sale of Cogent Research, LLC to MSI. At the time of the transaction, John Meunier, Christy White, and the John J. Meunier 2012 Irrevocable Trust were the sole owners of Cogent Research. They agreed to sell Cogent Research to MSI in exchange for an “Initial Payment” of $8.0 million, a “Delayed Payment” of $2.0 million, and a “Contingent Payment” of roughly $3.14 million that was due after MSI received additional audited financial statements of Cogent Research. Meunier and White also agreed to work for MSI for three years and entered into a non-competition agreement.
Meunier, White, and the irrevocable trust created Holdco in connection with this transaction. They transferred ownership of Cogent Research to Holdco, which in turn was the entity that actually sold Cogent Research to MSI. The parties’ purchase agreement provides that MSI was required to pay the Initial Payment, Delayed Payment, and Contingent Payment to Holdco. MSI does not have any contractual obligation to make any of these payments to Meunier, White, or the irrevocable trust.
Although the parties’ purchase agreement provides that MSI was to make the Deferred Payment and Contingent Payment to Holdco no later than April 30, 2016, a separate subordination agreement executed at the same time modifies those terms. The parties to the subordination agreement were Holdco, MSI, and an administrative agent representing Senior Lenders of MSI. Meunier and White signed this contract on behalf of Holdco. The subordination agreement pro-
*147 vides that the obligations of MSI to make the Delayed and Contingent Payments “shall be subordinate and subject in right and time of payment ... to the prior Payment in Full of all Senior Debt” held by the Senior Lenders. It further provides that MSI shall not make and Holdco shall not accept payment of any part of the Deferred and Contingent Payments until the Senior Lenders are paid in full. It also provides that the subordination agreement trumps any conflicting provisions in the purchase agreement and any other agreements pertaining to the Deferred and Contingent Payments.
The subordination agreement also contained a covenant not to sue. It provides that Holdco “shall not... take any Enforcement Action with respect to” the Deferred Payment and Contingent Payment obligations of MSI “without the prior written consent” of the administrative agent representing the Senior Lenders. The phrase “Enforcement Action” is defined to include bringing a lawsuit, or initiating or participating with others in a lawsuit, to collect all or any part of the Deferred Payment or Contingent Payment amounts.
In May 2016 Meunier, White, and the irrevocable trust all sued MSI in their own names, purporting to assert their own rights under the purchase agreement rather than rights belonging to Holdco. In their complaint, Meunier, White, and the trust allege they are third-party beneficiaries under the purchase agreement governing the sale of Cogent Research to MSI. They claim, among other things, that MSI breached the purchase agreement by failing to make the Deferred Payment and Contingent Payment by April 1, 2016. Meunier, White, and the trust sought a preliminary injunction against MSI, but that motion was denied in October 2016.
MSI responded to the first lawsuit by suing Holdco for breaching the covenant not to sue that Holdco entered into as part of the subordination agreement. This is the claim that Holdco now moves to dismiss. The two actions were consolidated for all purposes in January 2017.
2. Legal Analysis
MSI’s complaint does not allege facts plausibly suggesting that Holdco is liable for breaching its covenant not to sue with respect to MSI’s Deferred Payment and Contingent Payment obligations. Cf. Lopez v. Commonwealth, 463 Mass. 696, 701 (2012) (to survive a motion to dismiss under Mass.R.Civ.P. 12(b)(6), a complaint or counterclaim must allege facts that, if true, would “plausibly suggest! ]... an entitlement to relief’) (quoting Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)).
The Court must apply New York law in construing the covenant not to sue because another term in the subordination agreement says that the contract “shall be governed by and shall be construed and enforced in accordance with the internal laws of the State of New York[.]”
The lawsuit by Meunier, White, and the irrevocable trust does not violate the subordination agreement. The plain language of the covenant not to sue bars Holdco, not its individual members, from filing suit to compel MSI to make the Deferred and Contingent payments. MSI does not allege that Holdco itself has ever filed a lawsuit or taken any other enforcement action in violation of its covenant not to sue. Neither the subordination agreement nor the purchase agreement contain a covenant barring Meunier, White, and the irrevocable trust from bringing suit in an attempt to compel MSI to pay over the Deferred Payment and Contingent Payment amounts to Holdco. Presumably it never occurred to MSI that it needed such a covenant, since the purchase agreement specifies that those payments are owed to Holdco, and not to the individual owners and members of Holdco. Nonetheless, the only covenant not to sue binds Holdco but not Meunier, White, or the trust. The Court may not construe the parties’ written contract to “add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing.” Bailey v. Fish & Neave, 8 N.Y.3d 523, 528, 868 N.E.2d 956, 959 (N.Y. 2007), quoting Reiss v. Financial Performance Corp., 97 N.Y.2d 195, 199, 764 N.E.2d 958, 961 (N.Y. 2001).
MSI cannot create a viable claim for breach of contract merely by making the conclusoiy and incorrect assertion that Holdco breached the covenant not to sue. The interpretation of the parties’ unambiguous written contracts “is a question of law” that the court may resolve when deciding whether a party has asserted a viable contract claim. See, e.g., Eigerman v. Putnam Investments, Inc., 450 Mass. 281, 287 (2007) (affirming dismissal of complaint for failure to state a viable claim for breach of contract); accord, Bailey, 8 N.Y.3d at 528, 868 N.E.2d at 959 (applying New York law). Similarly, whether language used in a contract “is ambiguous is also a question of law for the court.” Berkowitz v. President & Fellows of Harvard College, 58 Mass.App.Ct. 262, 270, rev. denied, 440 Mass. 1101 (2003) (ordering dismissal of complaint for failure to state a viable claim for breach of contract); accord, Bailey, supra. Where the material provisions of a contract are unambiguous, as they are here, a court “cannot accept the bare assertion in the plaintiffs complaint” that the opposing party violated the contract, when that assertion is based on a misreading of the contract. Eigerman, supra; accord, Flomenbaum v. Commonwealth, 451 Mass. 740, 751-52 & n.12 (2008) (granting motion to dismiss contract claim because plain language of contract made clear that Commonwealth could terminate chief medical examiner before completion of full five-year term).
MSI argues with some force that the subordination agreement must be read in conjunction with the pur *148 chase agreement, and that Meunier, White, and the irrevocable trust have no right under the purchase agreement to compel MSI to make the contested payments to Holdco. The first of these points is certainly correct; the two contracts were executed together and the subordination agreement specifies that it will govern whenever its provisions conflict with the purchase agreement. The second of these points may also be correct. If so then MSI may have a simple and complete defense to the claims asserted in the first lawsuit by Meunier, White, and the trust: since the purchase agreement specifies that MSI owes the Deferred and Contingent Payments only to Holdco, and Holdco executed a subordination agreement providing that those payments cannot and need not be made until MSI has paid off its senior lenders, it is not at all clear that Meunier, White, and the trust have any legal right to sue MSI on the ground that it has not made these payments to Holdco.
But these arguments have nothing to do with the pending motion to dismiss, which challenges the legal viability of MSI’s breach of contract claim against Holdco. Given the plain language of the covenant not to sue, which applies only to Holdco and not to its individual members, the facts alleged in the complaint fail to state a viable claim for relief against Holdco. Whether MSI is entitled to judgment in its favor on the claims asserted against it by Meunier, White, and the irrevocable trust is a question for another day.
Under New York law, the facts alleged by MSI do not plausibly suggest any sufficient basis to pierce the corporate veil in reverse and impose liability on Holdco for actions taken by its members in their individual capacities. (Although MSI does not expressly invoke the theory of reverse veil piercing, it does seek to impose liability on Holdco for actions taken by its members in their individual capacities.)
New York law allows courts to act on “reverse” piercing claims, “disregard the corporate form,” and hold the corporation liable based on misconduct by its owners “whenever necessary to prevent fraud or achieve equity." State v. Easton, 647 N.Y.S.2d 904, 909 (N.Y.App.Div. 1995) (denying motion to dismiss action seeking to hold corporations liable for $7.5 million Medicaid fraud judgment against their president), quoting Walkovszky v. Carlton, 18 N.Y.2d 414, 417, 223 N.E.2d 6, 7 (N.Y. 1966). “As with conventional veil-piercing claims, in a reverse veil-piercing claim, the plaintiff must allege (1) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (2) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil.” Liberty Synergistics, Inc. v. Micrqflo, Ltd., 50 F.Sup.3d 267, 297 (E.D.N.Y. 2014), quoting JSC Foreign Economic Ass’n Technostroyexport v. International Dept. and Trade Svcs., Inc., 295 F.Sup.2d 366, 379 (S.D.N.Y. 2003); accord Easton, supra, at 910. “While complete domination of the corporation is the key to piercing the corporate veil, especially when the owners use the corporation as a mere device to further their personal rather than the corporate business, such domination, standing alone, is not enough; some showing of a wrongful or unjust act toward plaintiff is required.” Morris v. New York State Dept. of Taxation & Fin., 82 N.Y.2d 135, 141-42, 623 N.E.2d 1157, 1161 (N.Y. 1993).
The facts alleged by MSI easily satisfy the pleading requirements for the first prong of this test, but do not plausibly suggest that MSI can satisfy the second prong. The allegation that Holdco’s members filed the kind of law suit that Holdco is barred by contract from bringing itself cannot justify reverse-piercing the corporate veil. Under New York law, “a simple breach of contract, without more, does not constitute a fraud or wrong warranting the piercing of the corporate veil.” Skanska USA Bldg, Inc. v. Atl. Yards B2 Owner, LLC, 146 A.D.3d 1, 40 N.Y.S.3d 46, 54 (NY.App.Div. 2016), quoting Bonacasa Realty Co., LLC v. Salvatore, 109 A.D.3d 946, 947, 972 N.Y.S.2d 84 (N.Y.App.Div. 2013); contrast Liberty Synergistics, supra, at 299 (allegation of malicious prosecution “satisfies the second prong for veil-piercing”). Here, MSI does not even claim that Meunier, White, or the trust committed a breach of contract themselves by bringing the first lawsuit. And it does not allege facts plausibly suggesting that they committed any other wrongful act that would justify imposing liability on Holdco for their conduct.
ORDER
The motion by Cogent Research Holdings, LLC to dismiss the breach of contract claim against it is ALLOWED. No separate and final judgment shall enter at this time. Whenever final judgment enters in these consolidated cases, it shall dismiss the claim against Cogent Research Holdings, LLC with prejudice.